985 A.2d 928

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Percy THOMPSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 14, 2009.

Decided Dec. 29, 2009.

Lester Roy Zipris, Ellen T. Greenlee, Karl Baker, Defender Association of Philadelphia, Philadelphia, for Percy Thompson.

Hugh J. Burns, Jr., Philadelphia District Attorney's Office, Philadelphia, Mary Huber, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

Appellant Percy Thompson challenges the Superior Court's order affirming his judgment of sentence for possession of a controlled substance. We affirm.

On January 21, 2005, in the evening, Philadelphia Police Officer Orlando Ortiz was on duty in the 2400 block of Leithgow Street. Officer Ortiz knew the neighborhood as a high crime area in which narcotics, and specifically heroin, regularly were sold. The area was designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood. Officer Ortiz, a nine-year veteran of the police

force, and his partner, Officer Correa, were in plainclothes and driving an unmarked vehicle. Officer Ortiz saw a car parked by the sidewalk and observed Appellant standing in the street by the driver's side door. Officer Ortiz watched Appellant hand the male driver some money and saw the driver give Appellant a small object in return. Based on what he saw on the street and what he knew, including the fact that he had made several hundred narcotics arrests of this very type, Officer Ortiz believed the men were engaged in a drug transaction. Officer Ortiz stopped Appellant and recovered from his pocket a packet of heroin. Officer Correa approached the driver and ultimately recovered two packets of heroin from his hand and an additional 14 packets from his person.

Appellant was charged with possession of a controlled substance. He filed a pre-trial motion to suppress the heroin, claiming that police lacked the probable cause necessary to support the search and seizure. Philadelphia Municipal Court Judge James M. DeLeon denied the motion, found Appellant guilty after a stipulated trial, and imposed a 12–month probationary sentence. Appellant filed a petition for writ of certiorari in the Philadelphia Court of Common Pleas. Judge Susan I. Schulman denied the writ. Appellant filed an appeal with the Superior Court raising the same single claim regarding probable cause. The Superior Court panel affirmed based on its then-recent opinion in *Commonwealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004) (*en banc* ).

This Court granted Appellant's Petition for Allowance of Appeal on the following issues:

1. Whether the initial seizure and immediately ensuing search lacked probable cause and whether the lower courts applied erroneous standards to judge the constitutionality of police conduct.

2. Whether *per curiam* decisions of this Court specifically citing *Commonwealth v. Banks*, [540 Pa. 453] 658 A.2d 752 (Pa.1995), are precedential and controlling authority.

With respect to the first issue, we are reviewing the trial court's ruling denying Appellant's motion to suppress.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. . . . [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1134 (2007), *cert. denied*, 552 U.S. 894, 128 S.Ct. 211, 169 L.Ed.2d 158 (2007). Those properly supported facts are binding upon us and we "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

The parties agree that police were required to have probable cause in order to stop, seize, and search Appellant in the manner they did.[1] Thus, we apply the well-established legal standard that governs this matter. Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require *only a "probability*, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted) (emphasis supplied). In determining whether probable cause exists, we apply a totality of the circumstances test. *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d 1248, 1252 (1999) (relying on *Gates, supra* ).

1. Appellant states that while police may have had reasonable suspicion that some criminal activity may have been afoot, thus "warranting either further observations or possibly a *Terry* stop," there was not sufficient probable cause to warrant the "full-blown seizure and search" that occurred in this case. Appellant's Brief at 19.

This Court frequently has addressed the particular issues related to law enforcement's observations of drug trafficking on the street. Appellant insists that the long-standing "observed transaction" jurisprudence in this Commonwealth mandates reversal here. Among other cases, Appellant relies specifically on this Court's holdings in *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007), *cert. denied*, —— U.S. ——, 129 S.Ct. 448, 172 L.Ed.2d 321 (2008), *Banks, supra*, and *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973). According to Appellant, the Superior Court's ruling in this case "defies that long line of controlling precedent" which holds that "a single commercial transaction on a public street, without more, does not give rise to probable cause." Appellant's Brief at 7.

The Commonwealth, on the other hand, asserts that this Court's jurisprudence supports the Superior Court's decision here. According to the Commonwealth, the facts present more than the mere observation of a simple commercial transaction. Further, argues the Commonwealth, this case presents "an opportunity to clarify that when an officer who is familiar with drug sales sees what he recognizes as a drug sale, at a specific drug-selling location, he has probable cause to arrest the parties to the transaction." Appellee's Brief at 5.

We consider, in their order of decision, the cases on which Appellant relies. In *Lawson*, police observed the appellant as he stood on the street and received currency from individuals to whom he handed small objects that he retrieved from his wife. After observing three such transactions, police arrested the couple, who ultimately faced conspiracy and narcotics sales charges. In response to a claim that police lacked probable cause to arrest, the *Lawson* Court noted that "all of the detailed facts and circumstances must be considered." The *Lawson* Court concluded that those circumstances amply supported probable cause. 309 A.2d at 394.

The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important;

the movements and manners of the parties are important. Considering the facts and circumstances in their totality, we conclude that the officers acted as prudent men in believing that some type of contraband was being sold.

*Id.*[2]

In *Banks,* decided over twenty years after *Lawson,* this Court considered whether a police officer's "chanced" observation of a "single, isolated exchange of some currency for some unidentified item or items, taking place on a public street at midday," was sufficient to establish probable cause where the suspect also fled from police. 658 A.2d at 753. The *Banks* Court held that such circumstances fell "narrowly short" of probable cause. *Id.* While the *Banks* opinion gave few details on the specific circumstances of that case, the majority noted that "well recognized additional factors giving rise to probable cause were not present." *Id.* These included "a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs ... a case where the police observed multiple, complex, suspicious transactions ... [or] a case in which the police officer was responding to a citizen's complaint or to an informant's tip." *Id.*

*Dunlap* is this Court's most recent case on the issue of on-the-street drug trade. In *Dunlap,* Philadelphia Police Officer Devlin, a five-year veteran of the police force and a nine-month member of the drug strike force, observed the suspect on a Philadelphia street. Officer Devlin, who had previously conducted about fifteen to twenty narcotics arrests in the area, testified that the neighborhood suffered from "a high rate of nefarious activity, including drug crimes." *Id.* at 675. As Officer Devlin watched, the suspect engaged in a brief conversation with another man to whom he handed money and from whom he received small objects in return. Based on his experience and beliefs, Officer Devlin concluded that he had witnessed a drug transaction and so he arrested the suspect. Cocaine in the suspect's possession led to drug charges and,

---

**2.** As we observe *infra,* at notes 6 and 9, Appellant's reliance on *Lawson* as mandating reversal is misplaced.

ultimately, a pre-trial motion to suppress the evidence based on lack of probable cause.

The trial court in *Dunlap* held that the evidence was sufficient to establish probable cause and the Superior Court agreed. The *en banc* panel relied on the fact that Officer Devlin was an experienced narcotics officer, as well as the fact that the neighborhood had a reputation as a high drug-crime area.[3] *Id.* at 674 (citation omitted). This Court granted an appeal in order to determine whether the decision comported with *Banks*.

The majority opinion in *Dunlap* focused its analysis on the controlling nature of *Banks* and the "relevance of police training and experience to the probable cause determination." 941 A.2d at 674. The *Dunlap* majority held that "police training, without more, is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view the quantum of evidence observed at the scene." *Id.* at 675. The *Dunlap* majority characterized as erroneous the Superior Court's use of training and experience as a "stand-alone factor" and stated: "[t]o be clear, we hold that ... a police officer's training and experience is not a probable cause factor as in the *Lawson* sense." *Id.* at 676–77. Applying its holding, the *Dunlap* majority concluded that probable cause was lacking. *Id.* at 679.

At first glance, these statements of the *Dunlap* majority appear to exclude completely police training and experience as factors relevant to the probable cause calculation. But the *Dunlap* majority went on to explain its holding in a manner that arguably contradicted these statements, or at the very least obscured the standard the majority sought to establish. We do not seek to minimize the experience gained through years serving on the police force. Quite to the contrary, we

---

3. At the time the trial and intermediate appellate courts confronted the issue in the instant case, this Court had not yet published its opinion in *Dunlap*. Thus, the Superior Court's opinion in *Dunlap,* which held that police experience was a factor relevant to probable cause, guided both lower courts.

recognize that many officers, particularly those with specialized training, are able to recognize trends and methods in the commission of various crimes. For instance, an officer who has specialized in drug crimes may be more suspicious that a package contains illegal narcotics because of the form of packaging used to conceal those drugs. *He or she may recognize criminal activity where a non-police citizen may not.* However, *a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence.* By doing so, a court aware of, informed by, and viewing the evidence as the officer in question, *aided in assessing his observations by his experience, may properly conclude that probable cause existed.* This is true even where the court may have been unable to perceive the existence of probable cause had the court viewed the same evidence through the eyes of a reasonable citizen untrained in law enforcement.

*Id.* at 675–76 (citation omitted) (emphasis supplied). Thus, in explaining its holding, the *Dunlap* majority rejected blind reliance on a certain number of years on the police force as a probable cause factor, but nonetheless confirmed that police experience and training is relevant when the testifying officer is able to demonstrate a nexus between his or her experience and the conduct observed.

In a thoughtful concurring opinion, Justice Saylor joined the *Dunlap* majority with respect to its holding that *Banks* must be upheld. *Id.* at 680 (Saylor, J., concurring). But Justice Saylor's very first statement on the issue was that he believed a police officer's experience "may be fairly regarded as a relevant factor in determining probable cause." [4] *Id.* at 679 (Saylor, J. concurring). Despite this clear departure from the majority's purported holding, Justice Saylor characterized the majority opinion as a "legitimate and reasoned effort" to

**4.** This position comported, in part, with that of the dissenting justices, who would have found the probable cause standard satisfied and affirmed the judgment of sentence. *Dunlap,* 941 A.2d at 682–84 (Castille, J., dissenting) and at 685 (Eakin, J., dissenting).

resolve the competing issues of individual privacy interests and law enforcement/community protection. *Id.* at 680 (Saylor, J., concurring). Significantly, two of the four justices who constituted the *Dunlap* majority also joined Justice Saylor's expression, including his explicit statement that police experience constituted a relevant factor.

Regarding the issue of probable cause factors, Justice Saylor warned that an officer's "cursory assertion" of training and experience would be insufficient to trigger consideration because the goal at the suppression hearing was to "explain and justify the arrest . . . [which is] not accomplished by a general claim of expertise." *Id.* (citing Wayne R. LaFave, 2 Search and Seizure § 3.2(c) at 44–45 (4th ed.2004)). Noting that the arresting officer in *Dunlap* did little more than recite his experience, Justice Saylor concluded that the testimony failed to establish how that experience informed the officer's view of the exchange he observed.[5] *Id.* at 681.

Appellant's interpretation of *Dunlap* is that the majority opinion makes clear the "limited function of police experience" in the probable cause calculation. Appellant's Brief at 11. Further, Appellant argues, *Dunlap* precludes the suppression court from accepting as a "stand alone factor" a police officer's "hunch" that a suspect is engaged in illegal conduct. *Id.* at 12. Appellant argues that under the *Dunlap* majority's holding, reversal is mandatory because the trial court relied on Officer's Ortiz's training to find probable cause.[6]

The Commonwealth counters that the trial court's decision in this case does not offend *Dunlap* because the officer's

5. The officer in *Dunlap* testified to his numbers of years on the police force (almost five), his time on the narcotics strike force (about nine months), and the number of narcotics arrests he had made (about fifteen or twenty). 941 A.2d at 680–81 (Saylor, J., concurring).

6. Appellant also argues that reversal is warranted because the *Lawson* factors were not met. Appellant's argument in this regard relies solely on the fact that Officer Ortiz did not observe multiple transactions in this case. But *Lawson* did not *require* observation of multiple transactions for probable cause. Rather, it noted that observation of multiple transactions was one of six factors present in that case and, further, that all relevant factors are included in the probable cause inquiry. *Lawson*, 309 A.2d at 394.

training was not the only basis upon which probable cause was found and because the officer established a nexus between his experience and his observation.

In attempting to discern the precise holding and proper significance of the *Dunlap* majority opinion, we observe that the expression purports to hold that police experience is *not a factor* relevant to probable cause, while at the same time directs that police experience is *relevant* to the probable cause inquiry. The *Dunlap* majority rejected the notion that police experience is worthy of the label "factor," but it conceded that such experience informs the court's decision so much that it enables the court to find probable cause where it otherwise would be unable to do so. It is difficult to reconcile *Dunlap's* professed holding with its own explanation and rationale. Further, and perhaps more importantly, two of the justices in the *Dunlap* majority (as well as the three other justices who wrote their own expressions) were of the opinion that police experience and training indeed are proper factors to consider in determining probable cause.

In light of the *Dunlap* majority's equivocal explanation of its holding, and given the manner in which the votes were cast in that case, it is not surprising that both parties claim *Dunlap* supports their positions on appeal.[7] Our careful consideration of this issue, as well as the uncertainty of our jurisprudence in this area of the law, leads us to conclude that a clarification is warranted.

Upon review of the various *Dunlap* expressions, we recognize the logic and soundness of Justice Saylor's concurring opinion and so hold that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." 941 A.2d at 679 (Saylor, J., concurring).[8] We caution, however, that an officer's testimony in this regard shall not

7. The Commonwealth asserts that the "disagreement [among the justices] in *Dunlap* concerned whether the police officer, at the suppression hearing, must establish a 'nexus' between his experience and the observed transaction." Appellee's Brief at 14 n. 7.

8. Insofar as the *Dunlap* majority holds otherwise, it is expressly disapproved. The dissent suggests that we are "discarding" the precedent articulated in *Dunlap*, despite the fact that the *Dunlap* majority "com-

simply reference "training and experience abstract from an explanation of their specific application to the circumstances at hand." *Id.* at 681 (Saylor, J., concurring). As the *Dunlap* majority itself observed, "a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Dunlap*, 941 A.2d at 676. Indeed, a factor becomes relevant only because it has some connection to the issue at hand. The very foundation of the *Gates* totality test is the recognition that all relevant factors go into the probable cause mix.[9]

manded the complete agreement of four justices" and so "remains the clear and controlling statement of the law" with respect to whether a police officer's experience may be regarded a relevant factor in the probable cause inquiry. Dissenting Opinion at 235, 985 A.2d at 951–52. Respectfully, we cannot agree that the *Dunlap* decision is so clear-cut. While three justices of this Court indeed joined the majority expression in *Dunlap*, two of those justices also joined the concurring expression, which itself explicitly adopted the dissenting view on this precise issue. *See Dunlap*, 941 A.2d at 679 (Saylor, J., concurring) ("Like [dissenting justice] Mr. Justice Eakin, I believe that a police officer's experience may fairly be regarded as a relevant factor in determining probable cause"). In light of *Dunlap's* various expressions and votes thereon, and considering the majority's uncertain rationale described above, we conclude that the *Dunlap* majority is decidedly *not* a clear and controlling statement of the law.

9. The dissent relies heavily on this Court's *Lawson* decision in support of its claim that an officer's experience is not a factor affecting probable cause. *See* Dissenting Opinion at 227, 985 A.2d at 946 ("conspicuously absent from [*Lawson's*] list of ... circumstances is the subjective opinion of the police officer, standing alone ... based solely upon his or her general police training, or past observations of other transactions."). First, we do not hold that probable cause may be based on a police officer's subjective opinion standing alone. Rather, we conclude that a police officer's experience is a relevant factor in the probable cause inquiry as long as it has specific application to the circumstances at hand. Moreover, the dissent's reliance on *Lawson* in this context is flawed. *Lawson* does not set out an exhaustive list of all possible factors affecting probable cause; it sets out a list of the factors present *in that case*. That *Lawson*, decided over 35 years ago, did not discuss the arresting officer's experience in drug trafficking does not mean that this Court deemed such experience irrelevant. *Lawson* sets a fundamental standard that makes this fact clear. "All of the detailed facts and circumstances must be considered ... Considering the facts and circumstances in their totality, we conclude that the officers acted as

■ Applying this standard to the matter *sub judice* and in light of the certified record on appeal, we observe the following. The evidence at the suppression hearing established that Officer Ortiz was a nine-year veteran of the police force who was on undercover patrol in a high crime area that had been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood.[10] In addition to this designation by the department, Officer Ortiz was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street. In drawing a nexus between his experience and the observation he made, Officer Ortiz testified that he had seen this type of "exchange done several hundred times" on the street and had made several hundred narcotics arrests of this very type.

prudent men in believing that some type of contraband was being sold.... [T]he total facts and circumstances in this case furnished a reasonable basis for the arrest." 309 A.2d at 394.

**10.** The dissent repeatedly characterizes Officer Ortiz's experience regarding the neighborhood as subjective, thereby minimizing it. Dissenting Opinion at 230; 238; and 241, 985 A.2d at 948; 952; and 955 (noting the officer's "*opinion* of the nature of the neighborhood," "his *perspective* regarding the nature of the neighborhood as a 'high crime drug location,' " and his "subjective belief ... [based on] past *individual* experiences") (emphasis supplied). This personally held view, the dissent reasons, combined with the officer's prior observations of drug transactions just like this one, were "rooted in past unrelated events, and do not, in and of themselves, establish a fair probability that this particular transaction was criminal in nature, absent other surrounding indicia of criminality." Dissenting Opinion at 238, 985 A.2d at 952. We note our disagreement with the dissent's reasoning on two distinct grounds. To begin, it was not only Officer Ortiz's personal experience that the neighborhood he was patrolling was one that involved frequent drug trafficking, although the officer, in light of his experience in this area, clearly held such an opinion. Instead, the area had been designated as an Operation Safe Streets neighborhood. Thus, the Philadelphia Police Department had reached the conclusion, independent of any one officer's personal "opinion" or "perspective," that the neighborhood was a dangerous one. Secondly, we respectfully disagree that a neighborhood's designation as dangerous and an officer's prior observations of drug transactions there are somehow irrelevant as "rooted in past unrelated events." Police officers patrolling our streets and endeavoring to keep our citizens safe are wise to pay close attention to every detail of their surroundings. It is simply illogical to ignore those details, or to conclude that an officer's experience regarding them is not a "relevant factor" informing the probable cause inquiry.

Because we have determined that a police officer's experience may be fairly regarded as a relevant factor in determining probable cause, and due to the presence of additional factors in support of Officer Ortiz's conclusion that he was witnessing a drug transaction, we find no error in the Superior Court's conclusion that probable cause was present in this case. We do not base our decision solely on Officer Ortiz's experience and the connection he articulated between that experience and what he observed. We also rely on the fact that the transaction at issue occurred in the nighttime hours, on the street, in a neighborhood that the police department selected for the "Operation Safe Streets" program.[11] We conclude that the Superior Court properly upheld the denial of suppression in this case and properly affirmed the judgment of sentence.

 The second issue certified for our review concerns the treatment to be accorded this Court's *per curiam* decisions citing to *Banks*. Appellant asserts that these decisions are precedential and controlling authority. Appellant makes this argument based on what he characterizes as this Court's "implicit" direction. The Commonwealth responds by relying

11. We are aware that Justice Saylor's concurring opinion in *Dunlap* addresses the weight to be attributed to testimony about high-crime neighborhoods in cases such as these. On this issue, Justice Saylor suggests that "in the absence of some particular circumstance that does not substantially overlap with legitimate behavior ... the high-drug-activity location factor should [not] be given the sort of weight which would tip the totality scales in favor of finding probable cause...." 941 A.2d at 681 (Saylor, J., concurring). Justice Saylor's position on this issue has not been adopted by this Court. Moreover, this issue has not been briefed by the parties and is not the subject of this appeal. Nonetheless, we note that the circumstances surrounding the transaction here—a small packet exchanged for money from a pedestrian to a driver at night on a street corner in a manner consistent with hundreds of prior drug transactions—do not constitute a substantial overlap with legitimate behavior. We conclude that the additional fact that the neighborhood in question had been specially designated by the police department is a relevant factor. Moreover, contrary to Justice Baer's Concurring and Dissenting Opinion in this case, our conclusion does not elevate this factor above any other relevant factor. Instead, in keeping with the totality standard in *Gates*, we conclude that all of the circumstances surrounding the transaction at issue combined to establish probable cause.

on this Court's prior holdings that *per curiam* decisions do not constitute controlling authority.

Appellant draws our attention to *Commonwealth v. Fowler,* 550 Pa. 152, 703 A.2d 1027 (1997) (plurality), wherein the lead opinion referred to a *per curiam* decision as one carrying "the weight of binding precedent." *Id.* at 1031. Appellant also refers to the concurring opinion in *Nominating Petition of Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004), which noted that an unexplained *per curiam* decision unaccompanied by any citation to authority has no precedential value. *Id.* at 1191 (Castille, J., concurring).

None of the cases upon which Appellant relies can support his argument. *Fowler,* as a plurality decision, is not binding authority. Appellant's citation to *Benninghoff* not only references a non-binding concurring opinion, but attempts to expand significantly the observation in that expression to convert into binding precedent all *per curiam* decisions that include a citation to authority. This would fly in the face of this Court's frequent, clear, and unequivocal statements that the legal significance of *per curiam* decisions is limited to setting out the law of the case. This Court has made it clear that *per curiam* orders have no *stare decisis* effect. *Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 108 n. 14 (2007). *See also Commonwealth v. Smith,* 575 Pa. 203, 836 A.2d 5, 17 (2003) (concluding with certainty that a *per curiam* order that includes a citation to binding authority is not itself controlling and "establishes no precedent beyond the authority cited in the order"); *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 904 (1996) (holding that only if a *per curiam* order expressly affirms on the basis of the lower court opinion does the order have precedential force).

The rationale for declining to deem *per curiam* decisions precedential is both simple and compelling. Such orders do not set out the facts and procedure of the case nor do they afford the bench and bar the benefit of the Court's rationale.[12]

12. Indeed, the *Benninghoff* concurrence upon which Appellant relies explicitly notes that in rendering a *per curiam* affirmance, this Court

These inadequacies are manifest in the arguments Appellant makes in his brief to this Court. In attempting to support his position on the probable cause issue discussed above, Appellant repeatedly relies on several of this Court's *per curiam* decisions, all of which cite *Banks*. But in order to draw analogies between those *per curiam* decisions and his own circumstances, Appellant relies on the facts recited by the Superior Court or by the author of a dissenting statement to an order granting allowance of appeal. *See* Appellant's Brief at 16–18. Of course, such facts have not been adopted or even mentioned by this Court in its *per curiam* dispositions and Appellant has no way of knowing whether or to what extent any member of this Court relied on such facts to resolve the case in the manner it did. *See Smith*, 836 A.2d at 17 ("[T]here is no reason to conclude that the Justices who agreed on [the *per curiam* ] mandate accepted the dissenters' view of the facts, the procedural posture of the case, [or] the issue presented.").

Appellant's final argument on this issue is that "there is something inappropriate about a lower court disregarding entirely decisions of the highest court in the Commonwealth." We strongly disagree with this characterization. In *Smith*, *Tilghman*, and a host of other cases, this Court has explicitly *directed* the lower courts to regard *per curiam* decisions as non-precedential for the reasons articulated above. The lower courts' compliance with such direction is wholly appropriate.

Judgment of sentence affirmed.

Chief Justice CASTILLE and Justices EAKIN and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justices EAKIN and McCAFFERY join.

Justice BAER files a concurring and dissenting opinion.

does "not affirm the opinion below or the rationale it expressed." 852 A.2d at 1190 (Castille, J., concurring).

Justice SAYLOR files a dissenting opinion.

Justice TODD files a dissenting opinion.

Chief Justice CASTILLE, concurring opinion.

Recognizing the importance of clear majority expressions when possible, I join the Majority Opinion in its entirety. *See J.S. ex rel. H.S. v. Bethlehem Area Sch. Dist.*, 569 Pa. 638, 807 A.2d 847, 871 (2002) (Castille, J., concurring) ("I also join in the majority opinion because I believe that it is important for this Court to decide cases by clear majority opinion whenever possible, and particularly where, as here, the case is heard upon discretionary appeal."), *citing U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 408, 122 S.Ct. 1516, 152 L.Ed.2d 589, (2002) (O'Connor, J., concurring).[1] I write separately only to note that, left to my own devices, I would go farther.

My views in this area have been stated at length before. *See Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671, 681–85 (2007) (Castille, J., dissenting), *cert. denied sub nom. Pennsylvania v. Dunlap*, —— U.S. ——, ——, 129 S.Ct. 448, 172 L.Ed.2d 321 (2008); *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752, 754–55 (1995) (Castille, J., dissenting). I would overrule *Dunlap*, which, as the Majority details, was at war with itself over the relevance of police experience to the probable cause question, as reflected by the fact that two of the four Justices comprising the *Dunlap* majority also signed onto a **non-joining** concurrence, which expressed a different view on that central question. As explained in my *Dunlap* dissent, even accepting *Banks* as governing precedent, *Dunlap* was wrongly decided. 941 A.2d at 683.[2]

1. In holding that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause," the Majority Opinion "caution[s], however, that an officer's testimony in this regard shall not simply reference 'training and experience abstract from an explanation of their specific application to the circumstances at hand.'" Majority Op. at 210, 985 A.2d at 935 (quoting *Dunlap*, 941 A.2d at 679 (Saylor, J., concurring)). I do not read this caveat as requiring some sort of miniature trial concerning how the police officer tied his training and experience to his observations. A few questions should suffice.

2. *Banks* did not betray the hostility to police experience that was embraced when *Dunlap* rewrote this Court's Fourth Amendment juris-

Furthermore, I remain open to reconsideration of the two-page majority opinion in *Banks* itself, which I have elsewhere described as marking "the nadir in the history of this Courts search and seizure jurisprudence." *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 665 (1999) (Castille, J., joined by Newman, J., concurring and dissenting). And so it was, until *Dunlap* came along.

> prudence to view police training and experience as a non-factor in evaluating probable cause. In finding that the totality of the circumstances in *Banks* (single midday transaction of unidentified object for cash, followed by flight upon police approach) fell "narrowly short of establishing probable cause," the *Banks* majority stressed the absence of what it called "[w]ell recognized additional factors giving rise to probable cause." *Banks*, 658 A.2d at 753. In discussing those well-recognized factors, *Banks* noted that: "[t]his is *not* a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged. *See Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678 (1993)." *Id.*

> Judge Cercone's opinion in *Burnside*—cited approvingly and without qualification by *Banks* as sole support for a settled proposition—in turn included the following observations:

>> [W]hile a particular type of container may have lawful purposes, the circumstances under which a trained narcotics detective views its use may be tantamount to a view of actual contraband. .... The uncontradicted evidence presented by the Commonwealth in the instant case shows that Officer Jones was on patrol in an area with which he was closely acquainted and which he knew to be the scene of prior drug transactions. Officer Jones had been assigned to that locale for over five years and had personally effectuated between thirty and forty arrests for drug trafficking. From a distance of only ten feet, this experienced officer observed appellee holding a handful of the exact type of packets used by local narcotics dealers when selling cocaine.[FN1] The officer's suspicions as to the probable contents of the packets displayed by appellee were bolstered when appellee immediately concealed the packets and vacated his street location upon sighting the police patrol car. Officer Jones concluded that appellee's display of what appeared to be retail packages of a narcotic coupled with appellee's furtive movements supported the conclusion that appellee was in possession of contraband in violation of Pennsylvania's drug laws.

>> [FN1] Officer Jones had been present when the contents of such packets, seized in numerous previous arrests, were tested. All were found to contain cocaine.

> 625 A.2d at 681 & n. 1 (citation omitted). *Burnside* did not reference optometry. Indeed, to my knowledge, there is no case casting police training and experience as a mere "lens" in the jurisprudence of this

It is important to remember that these are Fourth Amendment cases, and thus this Court's institutional role requires us to recognize and follow the teachings of the U.S. Supreme Court. Yet, notwithstanding that the *Dunlap* majority's deviation from High Court authority was central to my Dissenting Opinion in *Dunlap, see* 596 Pa. at 166–68, 941 A.2d at 683–84 (citing governing cases from U.S. Supreme Court), the *Dunlap* majority proceeded as if there was no relevant federal authority.

For my part, I continue to believe that we are obliged to follow governing precepts announced by the U.S. Supreme Court in Fourth Amendment cases; at a minimum, we should indicate an awareness of their existence. *Dunlap* did not do so. *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973), was not legislation, and neither was *Commonwealth v. Banks*. These were individual Fourth Amendment cases, obviously tied to their facts. The expressions employed in the cases, to account for the considerations then presented and perceived, do not exhaust the Fourth Amendment universe. Thus, police experience does not become a "non-fact" in determinations of probable cause just because it was not at issue and not mentioned in *Lawson*. By the same token, the happenstance that multiple transactions were involved in *Lawson* does not make that a probable cause prerequisite. Indeed, if we are to pretend that these transactions are perfectly innocent—or innocent enough that they do not give rise even to a probability of crime, which is a very low threshold—how does repetition change the equation? That *Banks* and *Dunlap* reveal a blindness to the reality of street level drug crimes is a reason to consider hands-on police experience, not a reason to deride it and consign the good citizens in drug-infested neighborhoods to helpless victimhood.

In any event, I question the value of parsing cases such as *Banks* and *Dunlap* when those cases made little effort to account for the rest of the rich Fourth Amendment universe. The facts *sub judice* are analogous to those in *Dunlap*, as those facts were aptly—and entertainingly—summarized in

Court, or of the U.S. Supreme Court, prior to *Dunlap* embracing a Superior Court dissent which invented that approach.

Chief Justice John G. Roberts, Jr.'s statement, joined by Justice Anthony M. Kennedy, dissenting from the denial of *certiorari* in that case:

> North Philly, May 4, 2001. Officer Sean Devlin, Narcotics Strike Force, was working the morning shift. Undercover surveillance. The neighborhood? Tough as a three-dollar steak. Devlin knew. Five years on the beat, nine months with the Strike Force. He'd made fifteen, twenty drug busts in the neighborhood.
>
> Devlin spotted him: a lone man on the corner. Another approached. Quick exchange of words. Cash handed over; small objects handed back. Each man then quickly on his own way. Devlin knew the guy wasn't buying bus tokens. He radioed a description and Officer Stein picked up the buyer. Sure enough: three bags of crack in the guy's pocket. Head downtown and book him. Just another day at the office.

*Pennsylvania v. Dunlap*, —— U.S. ——, ——, 129 S.Ct. 448, 448, 172 L.Ed.2d 321 (2008) (Roberts, C.J., joined by Kennedy, J., dissenting). The Chief Justice noted that he would have found probable cause to be present: "A drug purchase was not the only possible explanation for the defendant's conduct, but it was certainly likely enough to give rise to probable cause." *Id.*

The Chief Justice's analysis of this typical, repeating fact pattern is instructive as a reminder of the limited quantum of proof required for probable cause as well as the practical, realistic nature of the probable cause inquiry under the Fourth Amendment:

> The probable-cause standard is a "nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (internal quotation marks omitted). What is required is simply "a reasonable ground for belief of guilt," *id.*, at 371, 124 S.Ct. 795 (same)-a "probability, and not a prima facie showing, of criminal activity," *Illinois v. Gates*, 462 U.S. 213, 235, 103

S.Ct. 2317, 76 L.Ed.2d 527 (1983) (same). "[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists," *Ornelas v. United States*, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), including inferences "that might well elude an untrained person," *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

On the facts of this case, I think the police clearly had probable cause to arrest the defendant. An officer with drug interdiction experience in the neighborhood saw two men on a street corner-with no apparent familiarity or prior interaction-make a quick hand-to-hand exchange of cash for "'small objects.'" 941 A.2d, at 673. This exchange took place in a high-crime neighborhood known for drug activity, far from any legitimate businesses. Perhaps it is possible to imagine innocent explanations for this conduct, but I cannot come up with any remotely as likely as the drug transaction Devlin believed he had witnessed. In any event, an officer is not required to eliminate all innocent explanations for a suspicious set of facts to have probable cause to make an arrest. As we explained in *Gates*, "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." 462 U.S., at 244, n. 13, 103 S.Ct. 2317.

The Pennsylvania Supreme Court emphasized that the police did not actually see any drugs. 941 A.2d, at 679. But Officer Devlin and his partner were conducting undercover surveillance. From a distance, it would be difficult to have a clear view of the small objects that changed hands. As the Commonwealth explains in its petition for certiorari, the "classic" drug transaction is a hand-to-hand exchange, on the street, of cash for small objects. Pet. for Cert. 5-8. The Pennsylvania Supreme Court's decision will make it more difficult for the police to conduct drug interdiction in high-crime areas, unless they employ the riskier practice of having undercover officers actually make a purchase or sale of drugs.

The Pennsylvania Court also noted that the defendant did not flee. 941 A.2d, at 671. Flight is hardly a prerequisite to a finding of probable cause. A defendant may well decide that the odds of escape do not justify adding another charge to that of drug possession. And of course there is no suggestion in the record that the defendant had any chance to flee-he was caught redhanded.

Aside from its importance for law enforcement, this question has divided state courts, a traditional ground warranting review on certiorari. S.Ct. Rule 10(b). The New Jersey Supreme Court has held that an "experienced narcotics officer" had probable cause to make an arrest when-in a vacant lot in a high-drug neighborhood-he "saw defendant and his companion give money to [a] third person in exchange for small unknown objects." *State v. Moore*, 181 N.J. 40, 46–47, 853 A.2d 903, 907 (2004). The Rhode Island Supreme Court reached the same conclusion in a case where the defendants-through their car windows-exchanged cash for a small "bag of suspected narcotics." *State v. Castro*, 891 A.2d 848, 851–854 (2006). In contrast, the Colorado Supreme Court held that a hand-to-hand exchange of unknown objects did not give the police probable cause to make an arrest, even where one of the men was a known drug dealer. *People v. Ratcliff*, 778 P.2d 1371, 1377–1378 (1989). All these cases have unique factual wrinkles, as any probable-cause case would, but the core fact pattern is the same: experienced police officers observing hand-to-hand exchanges of cash for small, unknown objects in high-crime neighborhoods.

The Pennsylvania Supreme Court speculated that such an exchange could have been perfectly innocent. But as Judge Friendly has pointed out, "[j]udges are not required to exhibit a naivete from which ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (C.A.2 1977). Based not only on common sense but also his experience as a narcotics officer and his previous work in the neighborhood, Officer Devlin concluded that what happened on that street corner was probably a drug transac-

tion. That is by far the *most* reasonable conclusion, even though our cases only require it to be *a* reasonable conclusion.

—— U.S. at ——, 129 S.Ct. at 448–49. *Accord Dunlap*, 941 A.2d at 685 (Eakin, J., joined by Castille, J., dissenting) ("Where police observe surreptitious street corner transactions, a drug sale is often, if not always, the most plausible explanation of the exchange. While an innocent explanation is certainly possible, we are not talking about certainties, but probabilities, and only probabilities that are reasonable. I have yet to come across an innocent explanation of such conduct in a brief or argument in any similar case that is arguably likely, much less equally probable. If a drug transaction is the most likely explanation, why should this Court permit continuation of the formulaic fiction that one transaction can never comprise probable cause? In this regard I believe *Banks*, which I acknowledge remains the prevailing precedent, was wrongly decided and overbroad, and ought to be revisited.").

Of course, persuasive as they are, neither the dissent of the Chief Justice nor the dissent by Mr. Justice Eakin is binding precedent; but the cases the Chief Justice cites are, and the Court's overall teachings about the nature of probable cause are. *Dunlap* made no effort to recognize our institutional role in determining this federal question: it failed to realize the importance of the High Court's jurisprudence, innovated its own idiosyncratic and contrary approach, and thereby failed to grasp the fundamental nature of probable cause. Police on the street should not be required to deny the realistic and the probable in favor of the improbable and the theoretical—and certainly not under the guise of a federal constitutional standard that is bottomed in reasonableness and practicality.

. I obviously do not deem it any great affront to *stare decisis* to revisit *Dunlap*, which is in tension with prevailing federal principles and which obviously has created confusion in trial courts, which deal with this most common of drug arrests every day. Moreover, this Court's published decisions in *Banks* and *Dunlap* are not the only source of confusion.

There were a number of unexplained *per curiam* reversals entered by this Court in the wake of *Banks*, which were difficult to square with the *Banks* majority's pronouncement that the facts in *Banks* fell just short of probable cause. That circumstance led to misguided and ultimately futile attempts to divine an implied jurisprudence out of our *per curiam* orders. The Majority performs a necessary and overdue supervisory function in deciding the second question accepted for review here, concerning that alleged shadow jurisprudence, which *Dunlap* inexplicably failed to resolve. Finally, I would note that concerns of *stare decisis* obviously are not as weighty in areas not subject to legislative response or correction.

I join the Majority Opinion.

Justice EAKIN and McCAFFERY join this opinion.

Justice BAER, concurring.

I concur with the Majority to the extent that it rejects Appellant's contentions that this Court must give precedential value to the *per curiam* orders rendered by this Court in the wake of *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995). Moreover, while I recognize the principles of *stare decisis*, especially considering the analogous factual circumstances between the instant appeal and *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007), *cert. denied*, —— U.S. ——, 129 S.Ct. 448, 172 L.Ed.2d 321 (2008), I am constrained to agree with the Majority concerning the confusing nature of the "lens" theory as portended by Mr. Justice Saylor's concurring opinion in *Dunlap*, and the dissenting statement issued by Chief Justice John G. Roberts, Jr., in the United States Supreme Court's denial of *certiorari* in *Dunlap*.[1] Indeed, I completely agree with the Majority that an officer's experience should be a relevant factor in determining

1. In so doing, I recognize that I joined the Majority in *Dunlap*, and further did not join Justice Saylor's concurring opinion. After long and careful consideration, however, I am now fully cognizant of the difficulties of police officers and trial judges alike in applying the "lens" theory espoused by the *Dunlap* majority.

probable cause, with the extremely important caveat that "a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." Majority Op. at 210, 985 A.2d at 935 (quoting *Dunlap*, 941 A.2d at 676.). In so much as it draws a distinction between the "lens" theory and this clarification, I join the Majority.

My agreement with the Majority must end here, however, because I cannot concur that the "high-crime" nature of the neighborhood "is a relevant factor." Majority Op. at 212 n. 11, 985 A.2d at 937 n. 11. Indeed, while the Majority explicitly adopts the portions of Justice Saylor's concurring opinion in *Dunlap* concerning the relevance of an officer's experience, in the same breath, it explicitly rejects his salient observations that "in the absence of some particular circumstance that does not substantially overlap with legitimate behavior ... the high-drug activity location factor should [not] be given the sort of weight which would tip the totality scales in favor of finding probable cause...." Majority Op. at 212 n. 11, 985 A.2d at 937 n. 11 (quoting *Dunlap*, 941 A.2d at 681 (Saylor, J., concurring)). Like Justice Saylor herein, "I am unable meaningfully to distinguish the circumstances in this appeal from those underlying our recent decision in [*Dunlap* ]," Dissenting Op. at 226, 985 A.2d at 945 (Saylor, J.), as I can discern no "particular circumstance that does not substantially overlap with legitimate behavior." *Dunlap*, 941 A.2d at 681 (Saylor, J., concurring).

Rather, in my view, it appears that the Majority clearly has given the high-crime nature of the neighborhood at issue here "the sort of weight which would tip the totality scales in favor of finding probable cause," *Dunlap*, 941 A.2d at 681 (Saylor, J., concurring), as that is the only way to distinguish the facts of this case from those presented in *Dunlap*. While I recognize that the police officers in this case may have ultimately "got it right," in that they arrested a man with drugs on his person, the long-term, overarching effect of this decision,

resulting in an "ends justify the means" circumstance, is far more troubling.

The unfortunate result of today's decision is that the low socio-economic character of a neighborhood will now be enough to suffice the rigorous standards of probable cause for any citizen, not just the street-level heroin dealer. While I understand that, in the social norms of today's world, drug transactions may occur more often in neighborhoods such as the one here, the rights of Pennsylvania residents in both high-crime and low-crime areas remain the same under our Constitution. To be sure, if police can now use evidence of the high-crime nature of the neighborhood to demonstrate probable cause, then the simple action of shaking a friend's hand upon greeting will subject those friends potentially to being searched and seized, while the same occurrence in a low-crime area will not. Such a conclusion is patently offensive to our longstanding constitutional principles protecting every person in our society from intrusive action by the state, even in the face of an ever-increasing drug problem on our streets. *See e.g. Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (recognizing that the Constitution prohibits selective enforcement of the law based upon subjective considerations.).

I fully realize that a drug transfer in this case could have occurred, and that probable cause does not require absolute certainty. *See Los Angeles County, California v. Rettele,* 550 U.S. 609, 615, 127 S.Ct. 1989, 167 L.Ed.2d 974 (2007). Nevertheless, the regrettable outcome of this decision places the deciding factor in a case, not on the perceived action, but rather on the location of that action. Again, while an arresting officer may be proved correct in his hunch, such is not an accepted constitutional norm.

Finally, the observations made by Madame Justice Todd and Mr. Justice Saylor in their dissenting opinions instantly,

as well as the ones I have now delineated, do not prohibit police from removing drug dealers from the streets. As recognized by the decisions in *Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973), *Banks,* and *Dunlap,* multiple transactions are surely to occur if the defendant is indeed a drug dealer. For this reason, I would support a finding of probable cause in a case where an officer witnesses multiple suspected drug transactions, because probable cause would be based upon repeated conduct and action, and not merely a location. Nevertheless, this Court, as the "last line of defense" for the protection of the constitutional interests of the citizens of this Commonwealth, should not remove reasonable constitutional constraints and, therefore, subject the entire population of a disadvantaged neighborhood to infringement of their Fourth Amendment rights.

Accordingly, because I agree with Justice Saylor's salient conclusion in *Dunlap* that we must not use the socio-economic character of a neighborhood as the tipping point in favor of finding probable cause, I must respectfully dissent to that aspect of the opinion.

Justice SAYLOR, dissenting.

The United States Supreme Court has observed that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Appellate inquiries in particular cases therefore tend to be heavily fact-specific, and they often present close questions. *See, e.g., Commonwealth v. Banks,* 540 Pa. 453, 456, 658 A.2d 752, 753 (1995) (holding that police observation of the exchange of an unidentified item on a public street corner for cash, together with subsequent flight, "fall narrowly short of establishing probable cause"). The present controversy is no exception. Particularly in view of the arresting officer's testimony that he believed he had witnessed an illegal drug sale due to both the location of the transaction and the fact that he had "seen that [hand-to-hand] exchange done several hundred

times," N.T. Sept. 29, 2005, at 11, the majority's holding is not without some foundation. Nevertheless, I am unable meaningfully to distinguish the circumstances in this appeal from those underlying our very recent decision in *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007). As such, I respectfully dissent.

Justice TODD, dissenting.

I respectfully, but vigorously, dissent from the Majority's conclusion that Appellant's immediate arrest was supported by the requisite, constitutionally-mandated probable cause.[1] In order to safeguard the inviolate right of the people of this Commonwealth to be free from unlawful seizures of their persons by the government, our Court has steadfastly enforced the Fourth Amendment's prohibition against arrest in the absence of probable cause. We have, for over 35 years, through our decisions in *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973); *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995); and *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007), *cert. denied*, —— U.S. ——, 129 S.Ct. 448, 172 L.Ed.2d 321 (2008), reiterated that probable cause to justify the immediate arrest of an individual does not exist simply because he or she has been observed selling an unknown item to another individual on a public street, unless there are sufficient additional objective facts and circumstances indicating criminal activity has occurred. However, with today's ruling in the instant matter, the Majority, under the guise of clarifying our Court's 2007 decision in *Dunlap*, *supra*, has effectively overruled that case by deviating from the probable cause rubric articulated and renewed therein without providing any rationale for its disregard of the principles of *stare decisis* which guide our jurisprudence. I believe this deviation to be unwarranted and unwise, since it has the potential to result in future arrests being made, not on the basis of objective facts but, rather, on the basis of nothing

---

1. Since I conclude, for the reasons set forth herein, that Appellant's conviction should have been reversed, I deem it unnecessary to address the second issue discussed in the majority opinion regarding the precedential effect of our Court's *per curiam* orders.

more than a subjective belief or inchoate hunch, thereby significantly diminishing our citizenry's vital constitutional protections.

In the case of *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973), our Court first articulated a bedrock principle of our search and seizure jurisprudence that "[e]very commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest." *Id.* at 29, 309 A.2d at 394. Our Court emphasized that, in such cases, a proper assessment of whether probable cause exists requires an examination of **all** of the objective factors surrounding the transaction such as: (1) the time of the transaction; (2) the street location of the transaction; (3) the use of the street for the transaction; (4) the number of the transactions; (5) the place where the items were kept by the sellers; and (6) the movements and manners of the parties. *Id.* at 28, 309 A.2d at 394.[2] Conspicuously absent from this list of externally observable and articulable factual circumstances is the subjective opinion of the police officer, standing alone, as to the nature of the transaction witnessed, based solely upon his or her general police training, or past observation of other transactions.

This is logical since our Court in Lawson established the proper role of the officer's training and experience in the probable cause analysis by quoting the standard enunciated by the United States Supreme Court in *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959): "Probable

---

**2.** Although not specifically referring to it as such, the *Lawson* requirement that all of the factual circumstances surrounding the alleged criminal activity be viewed in conjunction with one another to determine if probable cause to arrest was present has now come to be known as the "totality of the circumstances" test. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (reaffirming the use of the test to determine whether probable cause existed for issuance of search warrant and articulating its parameters). The *Gates* "totality of the circumstances" analysis was subsequently explicitly adopted by our Court, and it now governs all judicial evaluations of whether sufficient probable cause existed for a lawful warrantless arrest. *See Commonwealth v. Rodriguez*, 526 Pa. 268, 272–73, 585 A.2d 988, 990 (1991); *Commonwealth v. Clark*, 558 Pa. 157, 164, 735 A.2d 1248, 1252 (1999).

cause exists if the facts or circumstances known to the officer warrant a prudent man in believing that (an) offense has been committed." *Lawson,* at 27, 309 A.2d at 394 (quoting *Henry,* 361 U.S. at 102, 80 S.Ct. 168) (emphasis omitted). Under this test, a reviewing court examines the external facts and circumstances and considers them from the vantage point and perspective of the officer. Therefore, the officer's training and experience, in and of itself, does not exist as a separate component of this analysis but, rather, informs the court's consideration of the objective factors which the officer observed.

Before effectuating the arrest in *Lawson,* the officers had conducted surveillance of two individuals, a husband and wife, from a distance of approximately ten yards via high powered binoculars, and during this surveillance they witnessed three separate exchanges of small items for money. Each of the three exchanges involved a buyer approaching the husband and handing him cash, whereupon the husband would walk over to where his wife was standing. She would then remove a small object from a dark sack secreted in her bosom and give the object to her husband, who, in turn, passed it to the buyer. The buyer would subsequently depart, and the husband would pocket the money, while the wife returned to her position on the sidewalk several feet away. After seeing the third transaction transpire, the officers drove up to the scene in an unmarked vehicle. The sight of the approaching vehicle containing the officers caused the husband and wife to hurriedly retreat into a nearby bar. Once inside, the husband barred the door against the officers' entry while the wife ran to the ladies room. *Id.* at 25–26, 309 A.2d at 393.

Our Court considered the entirety of these observations, in conjunction with the standards set forth above, and concluded that the total facts and circumstances witnessed by the officers gave rise to probable cause to arrest. Even so, our Court found the totality of the observed circumstances presented a close question, and we cautioned that in conducting a probable cause assessment there was no one fact or circumstance which could be isolated and given specific weight over any of the

others. Our Court also was careful to point out that, had any one of the objective facts and circumstances been missing, a conclusion of probable cause may not have been justified. *Id.* at 29, 309 A.2d at 394.

Twenty-two years later, in our 5–1 decision in *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995), our Court reaffirmed the *Lawson* admonition that a single exchange of an unidentified object for money which occurs on a public street does not, in and of itself, furnish adequate probable cause for the immediate warrantless arrest of the citizens who participated. In *Banks,* a Philadelphia police officer was patrolling in his marked police car at 12:50 in the afternoon when he saw the appellant, who was standing on a street corner, reach into his pocket and hand an object to a female standing nearby who, after receiving the item, gave him some money. The officer could not see what the object was that the appellant handed to the female. As the officer approached in his car, the appellant fled, but he was almost immediately apprehended with cocaine discovered on his person.

The appellant's motion to suppress was denied by the trial court, and the denial was affirmed by the Superior Court. In reversing both courts, we focused on the complete dearth of any objective factors arising from the appellant's observed conduct that would link him to criminal activity and support a finding of sufficient probable cause on the part of police to immediately arrest him. We noted that, unlike in *Lawson,* the police officer did not observe the appellant engage in "multiple, complex, suspicious transactions." *Banks,* 540 Pa. at 455, 658 A.2d at 753. Additionally we pointed out this was "*not* a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged," and it was "*not* a case in which the police officer was responding to a citizen's complaint or to an informant's tip." *Id.* (emphasis original). Rather, we underscored that it was "simply a case where a police officer chanced upon a single isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer." *Id.* We

declared in our opinion, as we had done previously in *Lawson*, that this observation was not enough to effectuate a full-blown arrest, holding:

> [M]ere police observation of an exchange of an unidentified item or items on a public street corner for cash (which alone does not establish probable cause to arrest) cannot be added to, or melded with the fact of flight (which alone does not establish probable cause to arrest) to constitute probable cause to arrest. Such facts, even when considered together, fall narrowly short of establishing probable cause.

*Id.* at 456, 658 A.2d at 753.

Notably, we expressly rejected the argument that the appellant's flight at the sight of police gave rise to probable cause for his arrest, due to the paucity of other factual circumstances pointing to his involvement in criminal activity—once more reinforcing the principle that no one single factor viewed in isolation establishes probable cause. Moreover, and importantly, just as in *Lawson*, we did not set forth as an independent factor which may be considered in a probable cause analysis of this type the subjective opinion of the officer derived solely from past training and experience. Thus, *Banks* amplified our teaching in *Lawson* that probable cause to immediately arrest an individual does not exist unless a sufficiently adequate aggregation of objective factual circumstances have been observed by the arresting officer which establish a fair probability that the individual was involved in criminal activity. *Gates, supra, Rodriguez, supra.*

*Banks* remained undisturbed for the ensuing 12 years.[3] Indeed, a mere two years ago, in *Dunlap*, our Court expressly reaffirmed its viability, as well as the continuing precedential value of *Lawson*, under factual circumstances very similar to those in the case *sub judice*. In *Dunlap*, the arresting officer

3. During that time, our Court reversed the Superior Court no less than five times via per curiam orders which cited only to *Banks* as the reason for reversal. *See Commonwealth v. Albino*, 541 Pa. 424, 664 A.2d 84 (1995); *Commonwealth v. Lopez*, 543 Pa. 321, 671 A.2d 224 (1996); *Commonwealth v. Carter*, 543 Pa. 510, 673 A.2d 864 (1996); *Commonwealth v. Crowder*, 548 Pa. 392, 697 A.2d 262 (1997); *In re C.D.*, 556 Pa. 437, 729 A.2d 70 (1999).

was conducting surveillance of a street corner in Philadelphia when he observed the appellant approach another individual who was standing on the corner. The officer observed the appellant talk to the other individual briefly, hand him money and then receive from him unidentified small objects. Appellant subsequently walked away from the scene and was arrested shortly thereafter. A search of his person yielded 3 packets of crack cocaine. At the time he made his observations, the officer had been on the police force for nearly 5 years, a member of the drug strike team for 9 months, and had, by his recollection, made 15 to 20 arrests in the general geographic area of the corner, which he characterized as an area that suffered a "high rate of nefarious activity, including drug crimes." 596 Pa. at 149, 941 A.2d at 673. It was these prior experiences, and his opinion of the nature of the neighborhood, which gave rise to the officer's belief that the exchange he had witnessed was one involving illegal drugs. *Id.*

Appellant filed a motion to suppress the evidence based on the lack of probable cause to arrest him, which was denied by the trial court. He next appealed to the Superior Court, arguing that *Banks* required reversal, but a sharply divided 5–4 *en banc* panel of the Superior Court disagreed and affirmed his conviction. *Commonwealth v. Dunlap,* 846 A.2d 674 (Pa.Super.2004). Writing for the majority, Judge Klein attempted to distinguish *Banks* on the basis that the officer's nine-month experience on the drug task force, and the occurrence of the transaction in a high drug area where the officer had made 15 to 20 arrests, were two additional factors not present in *Banks* which gave rise to probable cause to arrest.

Judge Johnson authored a dissenting opinion in which he concluded that the majority's consideration of the officer's experience as a separate factor, in addition to the other six objective, circumstantial factors articulated in *Lawson,* improperly changed the law as it had been established by that case and *Banks.*[4] The dissent noted that the officer's experience was not an additional *Lawson* factor, which, by itself,

---

4. Then a Superior Court judge, I joined Judge Johnson's dissenting opinion.

gave rise to probable cause to arrest, but, rather, constituted a lens through which a reviewing court must consider the totality of the factual circumstances, particularly the various *Lawson* factors, as they were perceived by the officer. Consequently, the dissent viewed the majority as having fundamentally altered this probable cause analysis by adding the officer's experience as an independent element, and then improperly elevating it in importance over all of the remaining *Lawson* factors.

On appeal to this court, we reversed. In her majority opinion, Justice Baldwin found it important that our Court did not list police training and experience in *Lawson* as a factor to be considered in determining the existence of probable cause.[5] The majority also observed that since the time of our *Lawson* decision this Court "never formally recognized an officer's training and experience, *without more,* as a factor ... in the totality of the circumstances test. Instead, we have utilized officer training and experience as an aid in assessing the *Lawson* factors." *Dunlap,* 596 Pa. at 153, 941 A.2d at 675 (emphasis original). The majority emphasized that our Court has steadfastly reminded that, in applying the totality of the circumstances test "probable cause 'is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest, *guided by his training and experience.*'" *Dunlap,* 596 Pa. at 153, 941 A.2d at 675 (quoting *Commonwealth v. Norwood,* 456 Pa. 330, 334, 319 A.2d 908, 910 (1974) (emphasis original)).[6] Consonant with our Court's long standing judgment of the proper role and regard to be given to an officer's training and experience in a probable cause analysis, the majority held that "police training and experience, *without more,* is not a fact" in the probable

---

5. Justice Baldwin's opinion was joined, in full, by Justices Baer, Chief Justice Cappy, and Justice Fitzgerald. Justice Saylor authored a separate concurring opinion which was joined by Chief Justice Cappy and Justice Fitzgerald. Then–Justice, now-Chief Justice, Castille and Justice Eakin each authored a separate dissent.

6. This principle was also articulated, *inter alia,* in the cases of *Commonwealth v. Clark,* 558 Pa. 157, 165, 735 A.2d 1248, 1252 (1999); *Banks,* 540 Pa. at 453, 658 A.2d at 752, and *Commonwealth v. Evans,* 546 Pa. 417, 423, 685 A.2d 535, 537 (1996).

cause calculus but, rather, a " 'lens' through which courts view the quantum of evidence observed at the scene." *Dunlap,* 596 Pa. at 153, 941 A.2d at 675 (emphasis original). Elaborating, the majority pronounced: "[A] court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force." *Id.* at 154, 941 A.2d at 676. "Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id.*

The *Dunlap* majority additionally explained why this prerequisite was vital to enforcing the constitutional requirement that probable cause exist before a warrantless arrest may be undertaken:

[I]n reviewing probable cause, a police officer's training and experience is not a probable cause factor in the *Lawson* sense. If that were the case, the concept of probable cause as a constitutional barrier between the privacy of the citizen and unwarranted governmental intrusions would be undermined by an officer's ability to bootstrap a hunch based on constitutionally insufficient objective evidence simply by adverting to his experience as the foundation of his suspicion. While probable cause is a fluid concept, and requires only a showing that criminal activity *may* be reasonably inferred from a set of circumstances and need not be shown to, in fact, exist we must nonetheless remain true to its purposes, one of which is protecting citizens from arbitrary police intrusions. If we were to conclude that a police officer's experience was a factor to be added to *every* probable cause determination, rather than serve as a lens through which to view the facts, then every time an experienced officer begins a shift, probable cause begins to be assessed against all citizens every time they fall under the watchful eye of a suspicious officer who has been on the job for a meaningful period of time. The danger of this, of course, is the potential for innocent citizens being unlawfully seized and/or searched, i.e., being searched or seized with less than probable cause.

234 234

*Dunlap*, 596 Pa. at 156, 941 A.2d at 676–77 (citation omitted) (emphasis original).

Applying these tenets to determine whether sufficient probable cause existed to validate the appellant's arrest, the *Dunlap* majority reaffirmed the *Lawson/Banks* principle that every commercial transaction between citizens on a street corner involving unidentified property does not furnish probable cause for the arrest of the parties thereto. The majority considered the underlying facts surrounding the appellant's arrest to be "more analogous" to the sequence of events which transpired in *Banks*, as opposed to what occurred in *Lawson*, and it found the observed circumstances, even when viewed from the perspective of an experienced police officer, did not furnish sufficient probable cause to arrest.

The majority noted the presence of only one of the *Lawson* factors—the officer's claim that the transaction occurred in a "high crime area"—but it rejected the idea that this assertion, standing alone, provided probable cause to arrest. By contrast, the majority found the presence of a number of other significant details about the incident militating against a finding of constitutionally adequate probable cause for arrest: (1) the appellant participated in only one isolated transaction; (2) the officer had no tip or other information which suggested that the appellant was involved in drug activity or that a drug sale was about to occur; (3) the officer observed no drugs changing hands in the transaction or the presence of drug paraphernalia; and (4) the appellant made no attempt to flee from the police. Thus, the paucity of objective reasons for the appellant's arrest compelled the majority's conclusion that the arrest had improperly taken place on the basis of "mere suspicion, not probable cause." *Dunlap*, 596 Pa. at 157, 941 A.2d at 679. The arrest therefore violated the Fourth Amendment because it was the primary product of the officer's subjective hunch, not any objective external factors giving rise to a fair probability of criminal behavior when viewed by the officer through the lens of his experience.

In the case *sub judice*, the observed factual circumstances leading to the arrest of Appellant closely mirror those present

in *Dunlap,* and, thus, Appellant's arrest likewise suffers from the same critical deficiency of probable cause. Just as in *Dunlap,* the officer in the instant matter, prior to arresting Appellant, had no prior warning from an informant or identified citizen complainant that Appellant was involved in the narcotics trade and would be selling drugs at that location. Likewise, the arresting officer did not observe Appellant engaging in multiple orchestrated, complicated, and suspicious transactions; rather, he observed a single lone transaction, for an unknown object, after which Appellant did not flee or otherwise attempt to evade or resist the police. Importantly, the officer at no time observed the presence of any drugs, or containers which he knew through his experience to commonly be used to package controlled substances for sale.

The only factors present which the trial court found to justify the arrest of Appellant were the arresting officer's opinion of the nature of the neighborhood and his prior experience making drug arrests which gave rise to his belief that he had witnessed a sale of narcotics. *See* Trial Court Opinion, 8/11/06, at 6 ("The officer's knowledge of the nature of the area, his experience in drug arrests, his ability to observe the transaction, and his reasonable belief that he had just witnessed a sale of narcotics together were sufficient to constitute probable cause."). Nevertheless, the trial court considered these factors sufficient to establish probable cause based on the Superior Court's decision in *Dunlap,* which, as discussed at length above, we expressly overruled.[7] *Id.* at 6.

Because we rejected the Superior Court's rationale in our *Dunlap* decision and held that the factors relied on by the trial court herein, even considered together, are not enough to give rise to probable cause to arrest, the trial court's denial of Appellant's suppression motion should presently be reversed,

7. The Superior Court in the instant case affirmed on the basis of the trial court opinion and agreed with the trial court that its opinion in *Dunlap* was "controlling." *Commonwealth v. Thompson,* No. 1521 EDA 2006, unpublished memo at 4 (Pa.Super. filed June 19, 2007). As the Majority Opinion notes, we had not yet issued our decision in *Dunlap* when the lower courts in the instant case issued their respective decisions.

in accordance with our holding in *Dunlap*. However, even though the facts of the case *sub judice* are nearly on all fours with the facts of *Dunlap*, and even though this case presents the same legal question as that which we so recently resolved in *Dunlap*, the Majority today has chosen to abandon its holding by concluding that a police officer's experience may now be considered as a separate "relevant factor" to be utilized in determining whether probable cause exists for arrest. Majority Opinion, at 210, 985 A.2d at 935. The Majority arrives at this reversal of position from *Dunlap* by its wholesale adoption of a single element of Justice Saylor's non-precedential concurring opinion therein.[8]

Although two members of the *Dunlap* majority, Chief Justice Cappy and Justice Fitzgerald, also joined the concurring opinion by Justice Saylor, both justices, along with Justice Baer, joined Justice Baldwin's opinion fully and without reservation, thus signifying their agreement with all aspects of it. Having commanded the complete agreement of four justices, it is Justice Baldwin's opinion which is precedential, not the concurrence. *See Commonwealth v. Tilghman*, 543 Pa. 578, 588, 673 A.2d 898, 903 (1996) ("If a majority of the Justices of this Court ... join in issuing an opinion, our opinion becomes binding precedent on the courts of this Commonwealth. Our majority opinion is binding not only on the parties before us, under the doctrine of law of the case, but is precedent as to different parties in cases involving substantially similar facts,

8. While Justice Saylor agreed that a police officer's experience was a relevant factor in determining probable cause, his thoughtful concurrence also addressed a number of other matters, including concern about how much weight should be given to the fact that the location of the conduct was in a "high crime area" given its attendant ramifications, the relevance of experience and training by itself in establishing probable cause given the fact that many gestures and motions commonly associated with drug use are equally consistent with innocent legitimate, non-criminal activities; and his agreement with the majority's reaffirmance of *Banks* as "a legitimate and reasoned effort to implement the compromise embodied in the probable cause standard between safeguarding citizens from undue interference with their constitutionally-protected liberty and privacy interests, and the affordance of fair leeway to the government in its enforcement of the law and protection of our communities." *Dunlap*, 596 Pa. at 160–61, 941 A.2d at 680 (Saylor, J., concurring).

pursuant to the rule of *stare decisis.*" (footnotes and citations omitted)); *Commonwealth v. Davenport,* 462 Pa. 543, 559, n. 3, 342 A.2d 67, 75 n. 3 (1975) (opinion not representing the views of the majority of the court is not considered decisional); *In Re S.J.,* 554 Pa. 397, 398, 721 A.2d 796, 796 (1998) (Castille, J., concurring) (writing separately to offer guidance to the bench, bar, and law enforcement, but acknowledging concurring statement was "not precedential"). Therefore, the *Dunlap* majority's conclusion that an officer's experience and training are not independent factors in determining the existence of probable cause remains the clear and controlling statement of law with respect to this issue.

Moreover, even though Justice Saylor concluded in his concurrence that a police officer's experience "may fairly be regarded as a relevant factor in determining probable cause," relying on *Banks* he also emphasized our Court's historical insistence on finding a "factor ... distinctly associated" with the offense in question as a predicate to probable cause. *Dunlap,* 596 Pa. at 160, 941 A.2d at 679 (Saylor J., concurring). There is no indication that any such "distinctly associated" factor was present in the case at bar since the arresting officer observed no drugs, no containers commonly known to hold drugs, or multiple complex suspicious transactions. He merely observed a single exchange of money for an unidentified item which, in and of itself, is not "distinctly associated" with drug dealing. An exchange of money for a small object is also associated with the purchase of a bus pass or subway token, a cigarette, cigar, candy bar, and an innumerable host of other lawful objects. *See* William E. Ringel, *Searches and Seizures and Arrests and Confessions,* § 23:8 (2009) ("Even in the presence of a trained officer, however, gestures and motions commonly associated with drug use may also be so well associated with innocent activities that they do not suffice to establish probable cause."). Thus, as recognized in *Lawson, Banks,* and *Dunlap,* the fact that someone buys a small object from another person on a city street is not enough to establish probable cause.

Justice Saylor also noted in his concurrence, as the Majority presently acknowledges, that in order for the officer's training and experience to be considered in establishing probable cause, the officer must testify as to how his or her training and experience applies to the specific circumstances he or she observed. Here, the officer did not offer any testimony to explain what particular elements of the transaction he saw caused him to believe, based on his experience and training, that it was a sale of drugs. He instead relied on his prior observations of other transactions—the details of which he did not provide or compare—and his perspective regarding the nature of the neighborhood as a "high drug crime location." However, both factors are rooted in past unrelated events, and do not, in and of themselves, establish a fair probability that **this particular** transaction was criminal in nature, absent other surrounding indicia of criminality.[9]

9. As aptly noted by Professor Margaret Raymond of the University of Iowa School of Law:

Police testimony in the neighborhood cases ... focuses ... on the number of times the observed behavior, in the officer's experience, correlated with confirmation that the suspect was engaged in criminal conduct, without suggesting anything about how often comparable suspicions were proved groundless or how often those observed behaviors correlated with persons generally believed by the officer to be law-abiding. Asking how often the suspect's behavior in a particular neighborhood correlates with unlawful behavior without asking how often it correlates with lawful conduct creates a skewed and incomplete picture of the probability of criminal conduct generated by this evidence.

Margaret Raymond, *Down on the Corner, Out in the Street: Considering the Character of the Neighborhood in Evaluating Reasonable Suspicion*, 60 Ohio St. L.J. 99, 132–33 (1999) (footnotes omitted); *see also* Wayne R. LaFave, *2 Search and Seizure, Fourth Edition* § 3.6, 368 n. 224 (quoting James R. Acker, *Social Sciences and the Criminal Law: The Fourth Amendment, Probable Cause, and Reasonable Suspicion*, 23 Crim.L.Bull. 49, 79 (1987)): ("Three reasons suggest caution in allowing the nature of an area to carry weight in assessing whether activity that occurs in the area is likely to be criminal in nature. The dangers are those of committing the ecological fallacy (impermissibly attributing the characteristics of the area to individuals within the area); of legitimizing an impermissibly high incidence of false positives (arresting innocent parties), compounded by the likely correlation of factors such as race and socioeconomic status with the erroneous seizure decisions; and of giving valid definition to the concept of a 'high-crime area,' especially since police behavior can largely produce the measure or indicators of such areas (the problem of a 'self-fulfilling prophecy')."

By discarding our *Dunlap* precedent so soon after it was decided, the Majority has, in my view, forsaken our time-honored adherence to the doctrine of *stare decisis,* without sufficiently compelling justification. The doctrine of *stare decisis* "declares that, for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same even though the parties may be different." *Commonwealth v. Mitchell,* 588 Pa. 19, 72 n. 20, 902 A.2d 430, 462 n. 20 (2006). As we have long recognized, this rule is not merely procedural in nature. Rather, we have pronounced it to be:

> a principle of great magnitude and importance .... absolutely necessary to the formation and permanence of any system of jurisprudence[,] ... [w]ithout [which] we may fairly be said to have no law, [since] law is a fixed and established *rule,* not depending in the slightest degree on the caprice of those who may ... administer it.

*McDowell v. Oyer,* 21 Pa. 417, 423 (1853) (emphasis original). The rule, therefore, fulfills the laudatory purposes of "promot[ing] the evenhanded, predictable, and consistent development of legal principles, foster[ing] reliance on judicial decisions, and contribut[ing] to the actual and perceived integrity of the judicial process." *Stilp v. Commonwealth,* 588 Pa. 539, 599 n. 31, 905 A.2d 918, 954 n. 31(2006) (quoting *Randall v. Sorrell,* 548 U.S. 230, 243, 126 S.Ct. 2479, 165 L.Ed.2d 482 (2006) (Opinion Announcing the Judgment of the Court)); *see also Payne v. Tennessee,* 501 U.S. 808, 849, 111 S.Ct. 2597, 2621, 115 L.Ed.2d 720 (1991) (Marshall, J. dissenting) ("*Stare decisis* is essential if case-by-case judicial decision-making is to be reconciled with the principle of the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results[.]" (quoting *Appeal of Concerned Corporators of Portsmouth Savings Bank,* 129 N.H. 183, 227, 525 A.2d 671, 701 (1987) (Souter J., dissenting))). Thus, a sudden abandonment of past precedent without compelling reasons is strongly disfavored, since it undermines the finality of all our holdings and our ability to put the

bench, bar, and public on notice of the state of the law. *See Commonwealth v. Woodhouse*, 401 Pa. 242, 253, 164 A.2d 98, 104 (1960) (*"Stare Decisis* should not be trifled with. If the law knows no fixed principles, chaos and confusion will certainly follow."); *see also Commonwealth v. Poundstone*, 200 Pa.Super. 416, 188 A.2d 830, 832 (1963) ("Rules of law, carefully considered and definitely established, should not be lightly discarded. If the courts are to wave like wheat in the wind, the whims of the particular judges of the moment and not rules of law will control the destinies, lives and fortunes of our people.")

The rule of *stare decisis*, like all legal maxims, is, of course, not absolute. When it becomes "clear that the reason for a law no longer exists and modern circumstances and justice require a change, and no vested rights will be violated, a change should be made." *Woodhouse*, 401 Pa. at 253, 164 A.2d at 104; *see also Ayala v. Philadelphia Bd. of Pub. Ed.*, 453 Pa. 584, 305 A.2d 877 (1973) (holding that, where the reason for a rule of law has disappeared over time, *stare decisis* may be set aside). Likewise if the rule of law was based on an erroneous premise, or represents an anomaly by establishing a principle of law not in accord with the prevailing body of law, *stare decisis* does not demand rigid adherence to the rule. *Woodhouse*, 401 Pa. at 253, 164 A.2d at 104; *Lewis v. WCAB*, 591 Pa. 490, 919 A.2d 922 (2007).

None of these considerations is present, however, in the instant case. *Dunlap* was decided a mere two years ago; has not been eroded by any successive decisions of this Court; and its facts cannot be materially distinguished from the facts of the instant matter. Thus, *stare decisis* strongly militates against reversing *Dunlap* since it would serve to unsettle an area of law to which we very recently spoke and which we have long been consistent in our jurisprudence. It is jurisprudentially unsound to disturb an area of law to which our Court has so recently opined. *Gardner v. Consol. Rail Corp.*, 524 Pa. 445, 451, 573 A.2d 1016, 1018 (1990).[10]

**10.** The Justices of our Court have often set aside our differences with precedent out of respect for the principle of *stare decisis*. *See, e.g.,*

Moreover, the need to preserve stability in the law is especially potent in this instance since the decision being upended is one which confirms basic constitutional protections of individual rights. *See Florida Dept. of Health and Rehabilitative Serv. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 154, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (Stevens, J., concurring) ("The presumption [of validity of recently decided cases] is an essential thread in the mantle of protection that the law affords the individual. Citizens must have confidence that the rules on which they rely in ordering their affairs . . . are rules of law and not merely the opinions of a small group of men who temporarily occupy high office."); *c.f. Gerlach v. Moore,* 243 Pa. 603, 608, 90 A. 399, 400 (1914) (even where there has been and continues to be disagreement over the proper interpretation of our state constitutional provisions, decisions in prior cases must be "accepted as settled law, if the doctrine of *stare decisis* is to have any binding force in determining questions involving constitutional construction").

The fundamental legal principle undergirding our *Dunlap* decision was the simple recognition that each individual's Fourth Amendment protection against unlawful seizure can only be secured by requiring that there be observable objective factors giving rise to a fair probability of his or her involvement in criminal activity before he or she may be arrested, and that an officer's subjective belief, no matter how well intentioned or strongly felt because of past individual experience or training, does not constitute an objective factor upon which a finding of probable cause for arrest may be based. An insistence that probable cause be determined only

*Commonwealth v. Bennett,* 593 Pa. 382, 391 n. 5, 930 A.2d 1264, 1269 n. 5 (2007) (Chief Justice Cappy, writing for the Court, noting his earlier disagreement with *Commonwealth v. Hernandez,* 572 Pa. 477, 817 A.2d 479 (2003), but applying it as settled law nonetheless); *Yates v. Township of McKean,* 593 Pa. 436, ——, 931 A.2d 639, 640 (2007) (Eakin, J., concurring) (relying on the precedential value of *Burger v. School Board of the McGuffey School District,* 592 Pa. 194, 923 A.2d 1155 (2007), despite his continuing disagreement with the majority's decision therein); *In re Weidner,* 595 Pa. 263, 273–74, 938 A.2d 354, 361 (2007) (Saylor, J., concurring) (expressing continuing belief that *In re Reifsneider,* 531 Pa. 19, 610 A.2d 958 (1992), was wrongly decided but joining majority opinion out of respect to doctrine of *stare decisis* ).

242

by observed objective facts and circumstances suggesting a fair probability of criminal activity is not a new or anomalous principle of law, as it has been firmly rooted in our jurisprudence since the time of *Lawson.* Indeed, our Court acknowledged and accepted this principle nine years prior to *Lawson* in 1964 because it was the federal constitutional standard governing the legality of a warrantless arrest in existence since 1949. *See Commonwealth v. Negri,* 414 Pa. 21, 30–31, 198 A.2d 595, 600 (1964) ("The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists **where the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves** to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." (emphasis added and internal quotations omitted) (quoting *Brinegar v. U.S.,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949))). The reason for this requirement was not erroneous at its inception, nor has it been rendered obsolete over time. *Dunlap* merely reaffirmed the durable legal standards articulated in *Lawson* and *Banks* which are necessary to enforce Fourth Amendment protections, and no cogent and compelling reason now exists to dilute these protections by deviating from those decisions.

I therefore must dissent.