J-S74018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRIEK OATES | : | |
| | : | |
| Appellant | : | No. 2447 EDA 2015 |

Appeal from the Judgment of Sentence January 16, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012603-2013

BEFORE:  BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 20, 2017**

Tyriek Oates appeals *nunc pro tunc* from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his conviction for possession with intent to deliver narcotics[1] and possession of a controlled substance of a person not registered.[2]  After careful review, we affirm.

The trial court aptly summarized the relevant facts of the case, from the suppression hearing, as follows:

> The Commonwealth presented the testimony of Police Officer David Ewing and [Police Officer] Daniel Villafane.  In summary[,] Police Officer Ewing testified that on July 27, 2013, at approximately 8:20 to 8:30 p.m., he was on duty as [a] Philadelphia police officer and was in the area of 1119 Moyamensing Avenue. Police Officer Ewing was in an unmarked vehicle in plain clothes with a fellow officer at the time.  He stated

---

[1] 35 P.S. § 780-113(a)(3).

[2] 35 P.S. § 780-113(a)(16).

he observed a white male, identified as Mr. Rossi, standing in the area of the 1200 [b]lock of Moyamensing Avenue with money in his left hand and then speaking on his cell phone, which he held in his right hand.

He stated that upon seeing this, his partner drove the unmarked vehicle around the block and parked on Moyamensing Avenue, up the street from where they made this initial observation. He exited the vehicle and walked in the direction of where he was able to observe Mr. Rossi's actions.

Police Officer Ewing stated that he then observed a black Chrysler 300 pull up to 1119 Moyamensin Avenue and saw the defendant exit this vehicle and approach Mr. Rossi, who was now standing in the doorway of that address. He testified that he observed Mr. Rossi hand the defendant an unknown amount of money and then observed the defendant hand Mr. Rossi small objects into his open[] palm.

At that point Officer Ewing testified that he radioed to his backup team to follow the black Chrysler. Police Officer Ewing then walked across the street after the Chrysler left and Mr. Rossi had gone inside of 1119 Moyamensing Avenue. Through partially opened vertical blinds, he was able to observe Mr. Rossi with a small plastic bag of white powdery substance[3] that he suspected to be crack cocaine. At that point he testified that he radioed the backup team to stop the black Chrysler that the defendant was in.

On cross-examination, Police Officer Ewing reiterated that he observed clearly what he had previously testified to, including being able to see into the home through [the] window after what he suspected was a narcotics transaction, because of the open position that the vertical blinds were in when he made this observation. Photographs admitted into evidence supported his testimony that the blinds were partially opened.

At the time of this incident, Police Officer Ewing had been a police officer for nine years and testified that he had conducted over 100 narcotics surveillances prior to this surveillance and made what

---

[3] Officer Ewing actually testified that he saw "*two* clear bags with an off-white chunky substance which [he] believed to be crack cocaine" in Rossi's hand through the vertical blinds, immediately following the observed exchange with Oates. N.T. Suppression Motion, 1/7/14, at 7-8. However, a search incident to Oates's arrest did uncover *one* small bag containing an off-white chunky substance in Oates's underwear. *Id.* at 46.

he estimated to be 500 narcotics arrests for crack cocaine in his career up to that point. He testified that he believed he had observed a hand-to-hand narcotics transaction take place between Mr. Rossi and [Oates].

The Commonwealth then called Police Officer Villafane, who testified in summary that he was acting as a backup to Police Officer Ewing and his partner on the evening of July 27, 2013. This [o]fficer stopped the black Chrysler 300 that the defendant was a passenger in after being directed to do so by Police Officer Ewing over police radio. He stated that the defendant was in the passenger's seat and initially provided a driver's license with false information when he was asked for his identification. [Oates] was then placed under arrest and a search incident to that arrest revealed [Oates] had small plastic bags, as well as a larger sandwich type bag on his person, both of which contained a white powdery substance of suspected crack cocaine, as well as a plastic bag containing alleged heroin and $635.00.

The confiscated narcotics tested positive for cocaine base and heroin. The narcotics, the currency, and the cell phone [were] recovered from [Oates] and were all placed on property receipts.[4]

Trial Court Opinion, 1//19/17, at 5-7 (footnotes omitted).

On November 12, 2013, Oates filed a motion to suppress arguing that his arrest was illegal because the police did not have probable cause to believe that he was involved in criminal activity and, therefore, all the physical evidence recovered from the arrest should be suppressed. On January 7, 2014, the court held a suppression hearing; at the conclusion of the hearing,

_____

[4] Although on cross-examination Officer Villafane testified that the vehicle Oates was in was stopped at 15th and Shunk Streets in the City of Philadelphia, all the police paperwork indicated that Oates was stopped in the 1200 block of Moyamensing Avenue. N.T. Suppression Hearing 1/7/14, at 45. The trial court, however, determined that this fact was not of any significance to the overall facts of this case for purposes of suppression where the location of the vehicle stop was irrelevant to the issue of probable cause.

the court denied the motion and proceeded to a non-jury trial. *See* N.T.

Suppression Hearing, 1/7/2017, 67. Oates was found guilty of the above-

mentioned offenses and was sentenced to 21-42 months' incarceration,

followed by three years of probation.[5]

On appeal, Oates raises the following issues for our consideration:

(1)  Did the suppression court err by finding probable cause
     existed to arrest [Oates] based on the police [officer]'s
     observation of a single hand[-]to[-]hand transaction
     coupled with the supposed plain sight of drugs that were not
     associated with [Oates]?

(2)  Did the lower court err by finding that the police conducted
     a lawful frisk of [Oates] where they did not articulate that
     the items seized from him were immediately identifiable as
     contraband?

Probable cause to arrest and search exists where the facts and

circumstances within the knowledge of an officer are based upon reasonably

trustworthy information and are sufficient to warrant a man or woman of

reasonable caution in the belief that a suspect has committed or is committing

a crime. ***Commonwealth v. Thompson***, 985 A.2d 928 (Pa. 2009). In

determining whether probable cause exists, an appellate court applies a

totality of the circumstances test. "A police officer's experience may fairly be

regarded as a relevant factor in determining probable cause." ***Id.*** at 936.

However, there must be a nexus between the officer's experience and the

search, arrest, or seizure of evidence. ***Id.***

---

[5] The section 780-113(a)(16) offense merged, for sentencing purposes, with
the possession with intent to deliver charge.

In ***Thompson***, a police officer with nine years of experience was patrolling the streets in a high crime area. The officer observed the defendant hand money to another individual in exchange for a small object. ***Id.*** at 930. Relying upon his experience, the officer believed that a drug transaction had just transpired. The officer stopped the defendant and recovered heroin from the appellant's pocket. ***Id.*** The Supreme Court held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." ***Id.*** at 935. However, the ***Thompson*** Court cautioned courts that they "cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." ***Id.*** (quoting ***Dunlap***, 941 A.2d at 676). "Indeed, a factor becomes relevant only because it has some connection to the issue at hand." ***Id.***

Here, like in ***Thompson***, Officer Ewing observed a single hand-to-hand transaction of currency exchanged for a small, unidentified object. Under these limited circumstances, the value of the police officer's experience became critical to the probable cause determination. Because Officer Ewing's observation of the lone transaction, by itself, did not create probable cause, his experience was necessary to determine whether probable cause existed. As stated in ***Thompson***, that experience has value only if the officer can demonstrate a nexus between the experience and the observed behavior.

Viewing the totality of the circumstances, we conclude that probable cause existed to arrest Oates. Here, Officer Ewing observed Oates approach Rossi and given him currency in exchange for small objects. Officer Ewing testified that through partially opened vertical blinds[6] he clearly saw "two clear bags with an off-white chunky substance which [he] believed to be crack cocaine" in Rossi's hand immediately following the observed exchange with Oates. N.T. Suppression Hearing, 1/7/14, at 7-8. Officer Ewing was a nine-year veteran of the Philadelphia Police Force at the time of the arrest, had conducted over 100 narcotic surveillances, and estimated that he had made 500 arrests for crack cocaine in his career. *Id.* at 10-11. Moreover, Officer Ewing testified that he and his partner were in the process of following another suspect, who had just been observed the night before at the exact location of 12th and Moyamensing Avenue dealing narcotics, when they saw the instant transaction between Oates and Rossi. *Id.* at 12.[7]

Accordingly, we conclude that probable cause to arrest and search Oates existed where the facts and circumstances within Officer Ewing's knowledge were based upon reasonably trustworthy information and were sufficient to

---

[6] The Commonwealth introduced a photograph showing that the window blinds were open; Officer Ewing testified that the photograph accurately depicted the scene as he had viewed it at the time immediately after the exchange between Rossi and Oates. N.T. Suppression Hearing, 1/7/14, at 31-32; 42.

[7] Because we have determined that Office Ewing lawfully arrested Oates, there is no need to consider whether the evidence could have been lawfully seized as a frisk incident to an investigatory stop.

warrant an individual, of reasonable caution, to believe that Oates had committed or was committing a crime.   **Thompson**, **supra**.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2017