J-S07009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDRICK PRYOR | : | |
| | : | |
| Appellant | : | No. 1793 WDA 2019 |

Appeal from the Judgment of Sentence Entered July 30, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013565-2016

BEFORE:  SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                **FILED: APRIL 21, 2021**

Appellant, Fredrick Pryor, appeals from the judgment of sentence entered on July 30, 2019.  Following a jury trial, Appellant was convicted of four counts of robbery, one count of violating the Uniform Firearms Act, two counts of possession of a firearm prohibited, and three counts of recklessly endangering another person.[1]  After careful review, we affirm.

The trial court set forth the following factual history:

> On September 23, 2016, [Appellant] entered Chuong's Market on Arlington Avenue in the Arlington section of the City of Pittsburgh.  He was wearing a Chicago White Sox hat and his face was concealed with some type of a scarf or other clothing.  After walking briefly around the store, [Appellant] approached Pan Sun Chuong, who was working the cash register at a small desk in the store.  [Appellant] pointed a small handgun at Ms. Chuong and demanded that she give him all of the money in the cash register.

---

[1]   18 Pa.C.S.   §§ 3701(a)(1)(ii), 6106(a)(1), 6105(a)(1), and 2705, respectively.

He placed a blue backpack on the counter and ordered her to place the money inside the backpack. While Ms. Chuong was removing money from the cash register, a customer of the store, Madeline Cole, entered the store. Ms. Cole was preoccupied with winning lottery tickets. She walked right past [Appellant] and approached the cash register. When Ms. Cole realized that a robbery was in progress, [Appellant] ordered Ms. Cole and Ms. Chuong to lie down in the back of the store while pointing the gun at them. He took the backpack full of money and exited the store. He left the scene in a vehicle described as a white GMC Yukon SUV. The robbery was captured on video surveillance and was played at trial. Ms. Chuong was unable to identify [Appellant] because he had his face covered.

On October 13, 2016, [Appellant] entered the Be Nice African Braiding establishment in the Sheraden section of the City of Pittsburgh. At the time he entered this establishment, [Appellant's] face was covered with some sort of cloth and he was wearing a Chicago White Sox hat. [Appellant] again was wielding a handgun. Ousamne Diallo, one of the owners of the establishment, was in the store with a customer, braiding the customer's hair. Ms. Diallo's young child was with her in the store. [Appellant] pointed the gun at Ms. Diallo and demanded that she give him money. He wanted money from the cash register, her person and her purse. [Appellant] put his hands into Ms. Diallo's pockets. Ms. Diallo complied with his demands, put the money into a box and gave the money to [Appellant]. During the robbery, Ms. Diallo's husband called her. [Appellant] threatened Ms. Diallo to prevent her from answering the phone. [Appellant] then exited the store. She was unable to identify [Appellant] because his face was covered. Ms. Diallo did observe that [Appellant's] hair appeared to be in dreadlocks. Video surveillance of the robbery was played at trial.

Later that same day, [Appellant] entered Ann's Market in the Hill District section of the City of Pittsburgh. Wearing the same Chicago White Sox hat and a cloth covering his face, [Appellant] pointed a handgun at Tameika Shackleford. Ms. Shackleford was working the cash register. [Appellant] demanded money and he also took three packs of Newport cigarettes from the business. Ms. Shackleford gave [Appellant] money from the cash register and also from her person. Ms. Shackleford observed that

[Appellant's] hair was braided or in dreadlocks. After [Appellant] left the business, Ms. Shackleford went to the side door of the business and observed [Appellant] enter a white GMC SUV. She obtained the license plate information and called 911. Surveillance video of the robbery at Ann's Market was played at trial.

On the same day, [Appellant] returned to Chuong's Market. He walked directly to the area where Ms. Chuong was sitting and pointed the gun at Ms. Chuong. He again demanded the money. Ms. Chuong recognized the Chicago White Sox hat and the gun and literally asked [Appellant], "you come back?" [Appellant] nodded "yes." Ms. Chuong pressed an alarm, gave [Appellant] some money and [Appellant] left the store. Again, Ms. Chuong was unable to identify [Appellant] because he had his face covered.

At the time of the robberies, detectives had been conducting an investigation into a rash of robberies in the City of Pittsburgh. On October 13, 2016, officers had developed a suspect vehicle because of the report that a white GMC SUV with a license plate of JZG-3310 had been observed driving away from the scene of the Ann's Market robbery. The vehicle and its license plate had also been captured on a street surveillance camera. Officers learned that the registered owner of the vehicle was [Appellant's] girlfriend. Officers had also developed an address to which the suspect vehicle was registered, 104 Minooka Street. There had been a previous hit-and-run incident involving that vehicle and [Appellant] had been driving the vehicle during the hit-and-run. Immediately after the report of the robbery at Ann's Market, officers travelled to 104 Minooka Street to conduct surveillance on that residence. While parked near 104 Minooka Street, officers learned over the radio of the second robbery at Chuong's Market. Shortly after learning of the Chuong's Market robbery, officers observed the white GMC SUV pull up in front of 104 Minooka Street and park. Officer Justin Simoni was one of the officers conducting surveillance in that area in an unmarked police vehicle. The emergency lights of the unmarked vehicle were activated and Officer Simoni's vehicle pulled up behind the white GMC SUV. As Officer Simoni approached the vehicle, the front driver's side door of the white GMC SUV opened. [Appellant] exited the vehicle and Officer Simoni immediately ordered [Appellant] to the ground.

- 3 -

[Appellant] did not comply with the order and Officer Simoni physically grabbed [Appellant], placed him on the ground and handcuffed him. [Appellant] was quickly brought to his feet and patted down. He was then transported to Pittsburgh Police Headquarters and the white GMC SUV was towed from the scene. It was not searched at the scene.

Officers also compared surveillance video to photographs of [Appellant]. [Appellant] shared the same physical characteristics of the person observed in the security video of the robberies.

While at the police station, officers read [Appellant] his Miranda rights. [Appellant] initially denied any involvement in the robberies. Officers then left the interview room to apply for a search warrant for the white GMC SUV. Upon their return to the interview room, [Appellant] agreed to speak to the officers. His Miranda rights were read to him again. Officers informed him that they applied for a search warrant. [Appellant] did not request an attorney and he did not ask for the interview to stop. [Appellant] then admitted to committing all four robberies described above.

The white GMC SUV was searched pursuant to a search warrant. A black Chicago White Sox hat, a handgun, a blue backpack, latex gloves and $200 in small bills were found in the vehicle. The parties stipulated that [Appellant] had a prior conviction for robbery of a motor vehicle … and he did not have a license to possess or carry a firearm.

Trial Court Opinion, 12/24/20, at 2-6. The trial court sentenced Appellant to ten to twenty years of incarceration at each of the robbery convictions and a five-year term of probation for the violation of the Uniform Firearms Act, for an aggregate sentence of thirty to sixty years of incarceration followed by a

five-year term of probation.[2]  Order of Sentence, 7/30/19.  No further sentence was imposed for any remaining counts.

Appellant filed a post-sentence motion on August 9, 2019, and amended post-sentence motions on October 15, 2019, and November 4, 2019.  The trial court denied the post-sentence motions on November 7, 2019.  Appellant filed his notice of appeal on December 9, 2019.  The trial court ordered Appellant to file a Rule 1925(b) Concise Statement of Errors Complained of on Appeal within twenty-one days of the order.  Appellant sought and received an extension of time to file his Rule 1925 statement and timely filed it on February 7, 2020.

Appellant presents the following questions for review:

1. To be lawful, a warrantless arrest must be supported by probable cause.  The warrantless arrest of [Appellant] was unsupported by probable cause.  Did the suppression court err when it refused to suppress the evidence stemming from this unlawful arrest?

2. Did the suppression court err when it refused to suppress [Appellant's] statements after his unlawful arrest?

---

[2]  In its opinion, the trial court states erroneously that Appellant was found guilty of three counts of robbery and one count of possession of a firearm prohibited.  Trial Court Opinion, 12/24/20, at 1.  At trial, a jury found Appellant guilty of, *inter alia*, four counts of robbery and two counts of possession of a firearm prohibited.  Review of the sentencing order reveals that Appellant was sentenced at four counts of robbery.  Order of Sentence, 7/30/19.  The trial court ordered Appellant's sentence at one of the four robbery counts to run concurrently to one of the other robbery counts; thus, his aggregate sentence for the robbery convictions was thirty to sixty years of incarceration.  Order of Sentence, 7/30/19; N.T. (Sentencing), 7/30/19, at 22.  No further sentence was imposed for either of the possession-of-a-firearm-prohibited convictions.  Order of Sentence, 7/30/19.

3. Whether the Commonwealth presented sufficient evidence that Appellant, beyond a reasonable doubt, was the person to have committed the robberies[?]

Appellant's Brief at unnumbered 7.

Our standard of review of an order denying a motion to suppress is well-settled:

> When we review the ruling of a suppression court we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Hickman*, 208 A.3d 916, 925 (Pa. 2019).

In his first question, Appellant argues that the suppression court erred when it refused to suppress evidence stemming from Appellant's arrest. Appellant's Brief at unnumbered 14. Appellant posits that the arrest was unlawful because it was not supported by probable cause.

> Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime."

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (quoting *Commonwealth v. Rodriguez*, 585 A.2d 988, 990 (Pa. 1991)). "The question we ask is not whether the officer's belief was correct or more likely true than false." *Thompson*, 985 A.2d at 931 (quotation omitted). "Rather, we require only a **probability**, and not a prima facie showing of criminal

activity." *Id.* (emphasis in original). We apply a totality of the circumstances test to determine whether probable cause exists. *Id*.

In support of his first question, Appellant argues that when

[e]mploying a true totality of the circumstances analysis, it's important to understand what information the Police didn't have in their possession at the time of the arrest. For example, the Police did not know who was in possession of the vehicle leading up to the arrest, nor did they have a description of the robbers facial features.

Appellant's Brief at unnumbered 15. Appellant does not proffer any other information or evidence in support of his statement that the police lacked probable cause to arrest him. He asserts that viewed in the totality of the circumstances, the facts known to the officers did not rise to the level of probable cause necessary for Appellant's warrantless arrest. *Id*. at unnumbered 16.

In its opinion, the trial court stated as follows:

For the same reasons the officers possessed probable cause to seize the white GMC SUV,[3] those officers possessed probable

_____

[3] When discussing the seizure of the white GMC SUV, an issue Appellant raised in his Rule 1925(b) Statement but not in his brief before this Court, the trial court found:

As reflected on the suppression record, officers had been investigating numerous robberies all of which had the same *modus operandi*. On October 13, 2016, Ms. Shackleford reported the type of vehicle and the license plate number of the white GMC SUV. A white GMC SUV was also observed on a street security camera and its license plate was visible. Officers checked the license plate number and determined that the registered owner

cause to arrest [Appellant]. Officers possessed reliable information that [Appellant] had been driving the white GMC SUV registered to a female residing at 104 Minooka Street. Immediately after the robberies, [Appellant] was found at that location, driving the vehicle. These facts established probable cause to arrest him.

Trial Court Opinion, 12/24/20, at 16.

We agree with the trial court's assessment. As the trial court set forth above, the police officers possessed probable cause to arrest Appellant. In *Commonwealth v. Jones*, 335 A.2d 789 (Pa. Super. 1975), we concluded probable cause existed to arrest the defendant when he was one of two men who robbed a bar at gunpoint. One of the bar patrons noticed that the getaway car used by the robbers had a red bottom and a black top. *Id*. at 790. Additionally, two children had noticed the vehicle driving up and down the street in front of the bar prior to the robbery, and memorized a portion of

---

was a female who lived at 104 Minooka Street. Officers also learned that the female's boyfriend was [Appellant] and that [Appellant] had previously driven the white GMC SUV during a hit-and-run incident. Officers compared photos of [Appellant] with surveillance video obtained during the prior robberies and determined that [Appellant] shared physical characteristics with the suspected robber. Relying on this information, on the day of the robberies at issue here, police officers travelled to 104 Minooka Street and observed [Appellant] parking the white GMC SUV immediately after the robberies. Based on the proximity of time and the description of the vehicle and [Appellant], this [c]ourt believes that the police officers possessed the requisite probable cause that the white GMC SUV had recently been used to commit robberies and [Appellant] was the person who committed those robberies.

Trial Court Opinion, 12/24/20, at 14-15.

- 8 -

the digits on the license plate. *Id*. Approximately one hour later, two police officers, acting on the information relayed over the police radio, stopped a maroon-bottomed, black-topped car bearing a portion of the license plate digits six blocks from the scene of the robbery and arrested the defendant and his passenger. *Id*. On appeal, this Court determined that the above facts were sufficient "to warrant a person of reasonable caution to believe that the persons in the vehicle had committed a crime, and the arrest was, therefore, constitutionally proper." *Id.* at 791. *See also Commonwealth v. Rutigliano*, 456 A.2d 654, 657 (Pa. Super. 1983) (finding probable cause to arrest the defendant when the investigating officer knew of the occurrence of a robbery, the description of the car involved, and the fact that there were two occupants in the car, even though it had been two hours since the car had last been seen). We find no error in the suppression court's findings, and Appellant is due no relief on this issue.

In his second issue, Appellant avers that the suppression court erred in refusing to suppress incriminating statements made by Appellant because the statements were coerced by the police. Appellant's Brief at unnumbered 17. "When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary." *Commonwealth v. Nester*, 709 A.2d 879, 882 (Pa. 1998).

> It is well established that when a defendant alleges that his confession was involuntary, the inquiry becomes not whether the defendant would have confessed without the interrogation, but whether the interrogation was so manipulative or coercive that it

deprived the defendant of his ability to make a free and unconstrained decision to confess.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 525 (Pa. 2017) (quoting *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1137 (Pa. 2012)). Voluntariness is determined by the totality of circumstances surrounding the confession. *Yandamuri*, 159 A.3d at 525. This Court will consider the following factors, *inter alia*, when determining whether a statement was made voluntarily: "the duration and means of the interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and other factors which may serve to drain one's power of resistance to suggestion and coercion." *Commonwealth v. Bruno*, 154 A.3d 764, 790 (Pa. 2017) (quotation omitted).

> Additional relevant factors [include]: the accused's age and level of education and experience; his extent of previous experience with the police; whether the accused was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep, or medical attention[;] and whether he was abused or threatened with abuse.

*Yandamuri*, 159 A.3d at 525 (Pa. 2017). Moreover, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of the witnesses and the weight to be given their testimony." *Commonwealth v. Dutrieville*, 932 A.2d 240, 242 (Pa. Super. 2007).

Appellant's entire argument in support of this claim that his statements were not voluntary and were coerced by the police is set forth below:

- 10 -

In Commonwealth v DiStefano, 782 A.2d 574 (Pa. 2001), the Pennsylvania Supreme Court found that a police dominated and coercive atmosphere occurs when a defendant is interrogated in a police station, is detained for many hours (11 in DiStefano, 7 in [Appellant's] case), and the only persons the defendant sees during detention are the police officers. Such an atmosphere is "designed to elicit an incriminating response." Id. at 580[.]

Where evidence has been obtained in violation of a defendant's constitutional rights, the remedy is to suppress such evidence and all evidence which constitute fruit of the poisonous tree. Missouri v. Siebert, 542 U.S. 600 (2004).

Accordingly, [Appellant] respectfully requests that this Honorable Court find that the confessions obtained by the police were the product of coercion and not the voluntary statements of [Appellant] and, therefore, all confessions must be suppressed as well as any evidence obtained as a result of such statements.

Appellant's Brief at unnumbered 17-18. Appellant's three-paragraph discussion, which lacks any developed argument of relevant case law, is insufficient to show the trial court erred when it denied his motion to suppress. ***Commonwealth v. Holt***, 175 A.3d 1014, 1020 (Pa. 2017) (finding waiver of the appellant's argument for failure to properly develop it). Thus, we find this issue waived.

Even if we did not find waiver, Appellant has failed to show his confession was obtained involuntarily. The trial court set forth the following analysis:

The credible evidence from the suppression record demonstrates that [Appellant] was provided Miranda rights on two separate occasions while he was in custody. While [Appellant] initially denied participating in the robberies, he later recanted and admitted his role in that conduct. The record establishes that [Appellant] was not under undue duress from any conduct by the officers. Despite [Appellant's] self-serving

- 11 -

testimony, his decision to speak with the officers and admit his conduct was voluntary. This claim, thus, fails.

Trial Court Opinion, 12/24/20, at 18.

We find no error on the part of the trial court.[4] In the instant case, Appellant was questioned from approximately 3:00 p.m. until 10:00 p.m., and was not subject to overnight interrogation. N.T. (Suppression), 7/30/18, at 121, 128. Appellant signed a **Miranda** waiver form at approximately 3:00 p.m. and agreed to speak with police. *Id*. at 67, 123. Appellant was offered water and asked whether he needed to use the restroom during the time he was held. *Id*. at 118, 132. Prior to Appellant's second interview, which began at approximately 8:00 p.m., he was read his **Miranda** rights a second time and again agreed to speak with the detectives. *Id*. at 117. We further note that Appellant did not admit to committing all of the robberies the police questioned him about; instead, he admitted to committing eleven of the sixteen robberies. *Id*. at 149.

_____

[4] To the extent Appellant relies upon **Commonwealth v. DiStefano**, 782 A.2d 574 (Pa. Super. 2001), that case is factually distinct, and it does not provide support for his argument. Indeed, in **DiStefano**, this Court found the confession was involuntary, where the appellant was held for an eleven-hour interview from 7:00 p.m. until he signed a written confession the next morning at 6:00 a.m. *Id*. at 581. The Court also looked to the fact that the police assured the appellant that he would receive psychological help, but that would occur only after he was arrested, and that he would be able to finish college and earn his teaching certificate even if he was arrested. The Court also noted that the appellant did not receive **Miranda** warnings until after he signed the confession following the eleven-hour interview. *Id*. at 581-582. Applying a totality of the circumstances test, we found the appellant's confession was not made freely and should have been suppressed. *Id*. at 582.

During the suppression hearing, Appellant admitted that he was read his ***Miranda*** rights and agreed to speak with the police. ***Id***. at 146. Appellant also testified that he admitted to the robberies. ***Id***. at 148. Further, Appellant stated that he was not threatened or physically abused by the police. ***Id***. at 150. When questioned about his mental state during the interrogation, Appellant responded, "At the time, I was just tired. I was tired." ***Id***. at 143. Appellant has failed to show any conduct on the part of the police that would render the interrogation so manipulative or coercive to deprive him of his ability to make an unconstrained decision to confess. ***See Yandamuri***, 159 A.3d at 525-526. Appellant's claim is without merit.

In his final issue, Appellant avers that evidence at trial did not prove the charge made in the indictment. Appellant's Brief at unnumbered 18. Appellant argues that the Commonwealth failed to present sufficient evidence establishing that Appellant was the individual who committed the robberies. ***Id***. at unnumbered 19.

Our standard for review of a sufficiency-of-the-evidence claim is as follows:

> When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the fact-finder to find that all elements of the offense were established beyond a reasonable doubt.

- 13 -

*Commonwealth v. Woody*, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted). "Furthermore, '[t]he Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence.'" *Id.* at 361–362 (quoting *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. 1997)). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). Further, "circumstantial evidence is reviewed by the same standard as direct evidence—a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2005) (quotation omitted). "Additionally, we may not reweigh the evidence or substitute our own judgment for that of the factfinder." *Commonwealth v. Walker*, 139 A.3d 225, 229 (Pa. Super. 2016).

In support of the issue, Appellant posits that the Commonwealth failed to prove that Appellant was the perpetrator. Appellant's Brief at unnumbered 19. Appellant appears to assert the evidence was insufficient because none of the eye-witnesses was able to identify Appellant as the robber. *Id*.

Appellant is due no relief on these grounds. The circumstantial evidence established Appellant as the perpetrator of the robberies. Identity can be

- 14 -

proven by circumstantial evidence at a criminal trial. ***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) ("Direct evidence of identity is, of course, not necessary[,] and a defendant may be convicted solely on circumstantial evidence.") In the instant case, the tools for committing the robberies were in the car Appellant was driving at the time of his arrest. N.T. (Trial), 4/25/19, at 12-13, 15. One of the victims recorded the license plate number of the vehicle Appellant used and provided that information to police. ***Id***. at 70. Appellant's appearance matched that of the perpetrator. ***Id***. at 82. Finally, Appellant admitted to committing each of the robberies. Appellant is due no relief on this issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/21/2021