J-S24042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYLER LETHRIDGE | : | |
| | : | |
| Appellant | : | No. 789 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 29, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0003461-2023

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:          **FILED:  September 12, 2025**

Tyler Lethridge ("Lethridge") appeals from the judgment of sentence imposed following his convictions for one count of possession of a controlled substance and two counts of possession with intent to deliver ("PWID").[1]  We affirm.

In 2023, Pittsburgh Police Officer Alexander Franks ("Officer Franks") and his sergeant were conducting surveillance from the sixth floor of a building in an area of Pittsburgh where police had "received numerous . . . complaints about narcotics use [and] sales[, and where there had been] several overdoses."  N.T., 1/29/24, at 7.  At the time of this surveillance, Officer Franks had received training on "how to observe different styles of narcotics transactions, how to apprehend individuals [engaging in narcotics transactions, and] how to [recognize] undercover buys[.]"  *Id*. at 6.  At around

---

[1] *See* 35 P.S. § 780-113(a)(16), (30).

2 to 3 p.m., the officers turned their attention to a man, later identified as Lethridge, standing across the street. Lethridge "appeared to be the only person in that immediate area that was not a drug user[,]" as he had not been observed using any drugs or exhibiting any of the typical signs of drug use, such as "nodding off[,]" but was instead just standing on the steps of a church "in plain clothes, hand in pocket, looking around a lot." *Id*. at 7.

With the assistance of binoculars, Officer Franks witnessed Lethridge separately interact with two individuals. When Lethridge "was [first] approached by an unknown black male[, Lethridge bladed his body,] pulled out a small plastic baggie[,] and handed [the man] . . . a small white rock[,]" which Officer Franks believed to be crack cocaine, in exchange for U.S. currency. *Id*. at 8, 19. Accordingly, Officer Franks believed he had just observed a narcotics transaction. A "minute or two later[, Lethridge] was approached by a white female who did the same thing essentially[,]" as Lethridge "pulled out a small plastic baggie and handed her a small white rock" in exchange for U.S. currency. *Id*. at 8. Officer Franks again believed this exchange constituted a narcotics transaction.

Following this second exchange, Officer Franks instructed another officer in the area to take Lethridge into custody. The officers did not apprehend the two individuals who they believed to have purchased cocaine from Lethridge. While Lethridge was in custody, Officer Franks searched his person and recovered a "digital scale[,]" approximately $600 in U.S. currency, and "a small plastic baggie of what [the officer] believed at the time to be crack

cocaine." ***Id***. at 10. The Commonwealth subsequently charged Lethridge with the above-listed crimes.

Prior to trial, Lethridge filed a motion to suppress, arguing that the discovery of the crack cocaine, U.S. currency, and digital scale should be suppressed, as police arrested and illegally searched his person without probable cause and in violation of his rights pursuant to the Pennsylvania and United States Constitutions. **See** Motion to Suppress, 9/21/23, at 2-3. The trial court held a hearing on the motion, during which the Commonwealth presented testimony from Officer Franks, who testified to the above sequence of events. At the conclusion of the hearing, the trial court denied suppression, finding that police had requisite probable cause to arrest and search Lethridge.

The matter proceeded directly to a non-jury trial that same day. Notably, because Officer Franks had just testified at the preceding suppression hearing, the parties agreed to incorporate the transcript of his testimony into evidence at trial. **See** N.T., 1/29/24, at 28-29. As such, when the Commonwealth presented testimony from Officer Franks once more, his testimony was brief and only further elucidated that: (1) he believed that the plastic baggie recovered from Lethridge contained crack cocaine intended for distribution, as people who sell narcotics in the officer's experience often either carry individual "small[,] knotted baggies or one . . . larger baggie with multiple small rocks inside[,]" as was the case here; and (2) the recovered 0.824 grams of the substance in the plastic bag was sent to the crime lab, where it tested positive for cocaine. ***Id***. at 30-32.

Lethridge additionally testified in his defense. Relevantly, Lethridge testified that on the afternoon of his arrest, he had just gotten off a bus "from Wilkinsburg[,]" where he "had smoked some crack [and] snorted some fentanyl." *Id*. at 37. Lethridge clarified that he "usually snorts [his] coke and [his] fentanyl . . . off a scale." *Id*. at 38-39. Upon exiting the bus, Lethridge stated that he immediately traveled to the church, which acted as a homeless shelter overnight, as he "usually tr[ied] to get there early so [he could] get a nice spot in the shelter[,]" ahead of the "hundreds of people" who also typically use it. *Id*. at 37. Lethridge maintained that while he was waiting on the steps to the church, someone "immediately" approached him with an offer to sell him two packs of cigarettes, and that he subsequently purchased them for a total of ten dollars. *Id*. Lethridge next explained that after purchasing the cigarettes, "a lady asked . . . to buy one from" him. *Id*. Lethridge elaborated, however, that after the lady "gave [him] a dollar, and before [he] even got to . . . open up . . . one of the packs of cigarettes," police had arrested him. *Id*. Lethridge asserted that "at no point" prior to this did he "hand over a small plastic baggie to anyone[,]" as the drugs therein were only for his "personal use." *Id*. at 40.

At the conclusion of trial, the court convicted Lethridge of one count of possession of a controlled substance and two counts of PWID. The matter proceeded directly to sentencing, whereupon the court imposed an aggregate sentence of twelve to twenty-four months' imprisonment, followed by two years' probation. Lethridge thereafter filed two post-sentence motions, which

the trial court denied.[2]  Lethridge subsequently filed a timely notice of appeal,

and both he and the trial court complied with Pa.R.A.P. 1925.[3]

Lethridge raises the following issues for our review:

1. Whether the trial court erred when it denied . . . Lethridge's motion to suppress all evidence derived from the unlawful search incident to arrest as fruit of the poisonous tree because Officer Franks did not have probable cause to conduct a warrantless arrest?

2. Whether the evidence was insufficient to convict . . . Lethridge of delivery of a controlled substance where the Commonwealth failed to prove, beyond a reasonable doubt, that . . . Lethridge delivered a controlled substance to either of the unknown individuals?

3. Whether the evidence was insufficient to convict . . . Lethridge of [PWID] where the Commonwealth failed to prove, beyond a reasonable doubt, that . . . Lethridge possessed a controlled substance with the intent to deliver it to another?

Lethridge's Brief at 6 (unnecessary capitalization omitted).

In his first issue, Lethridge challenges the denial of his suppression

motion.  Our standard of review for the denial of a suppression motion is well-

settled:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether

_____

[2] Our review of the record indicates that the trial court granted Lethridge multiple extensions of time to file his first post-sentence motion, and that it later reinstated his post-sentence motion and direct appeal rights, *nunc pro tunc*, due to a change in his appointed counsel.

[3] Although our review of the record does not uncover Lethridge's Rule 1925(b) concise statement, the trial court's Rule 1925(a) opinion indicates that he timely filed this statement, and that in doing so, he raised the four issues that the trial court quoted in its opinion.  **See** Trial Court Opinion, 9/19/24, at 3-4.

the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[] below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[]trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. *See Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *United States v. Mendenhall*, 446 U.S. 544, 551 (1980)). However, not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections. *See Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019). Accordingly, interactions between civilians and police officers fall into one of three categories:

These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), . . . need not be supported by any level of suspicion [and] carries no official compulsion to stop or to respond. The second, an "investigative

- 6 -

detention" must be supported by reasonable suspicion [as] it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or ["]custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa. Super. 2016) (citation omitted).

Where, as here, police immediately seize and search a defendant, the Commonwealth is required to establish the officer had probable cause to make the arrest. *See Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). As our Supreme Court has explained:

Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." The question we ask is not whether the officer's belief was "correct or more likely true than false." Rather, we require only a "*probability*, and not a prima facie showing, of criminal activity." In determining whether probable cause exists, we apply a totality of the circumstances test.

*Id*. (citations omitted) (emphasis in original). "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most reasonable inference." *Commonwealth v. Brogdon*, 220 A.3d 592, 599 (Pa. Super. 2019) (citation omitted). Lastly, while "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause[,]" our Supreme Court has cautioned that a court cannot simply infer its existence "based upon nothing more than the number of years an officer has spent on the force. Rather the

officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." ***Commonwealth v. Delvalle***, 74 A.3d 1081, 1085 (Pa. Super. 2013) (quoting ***Thompson***, 985 A.2d at 930).

Lethridge argues that "the trial court erred in denying the motion to suppress because Officer Franks did not have probable cause to arrest [him] and search his person after observing — from the sixth floor of a building across the street while using binoculars — [him] interact with two unknown individuals." Lethridge's Brief at 15 (unnecessary capitalization omitted). Lethridge points out that "Officer Franks declined to investigate whether the perceived transactions were in fact narcotic transactions, and, instead, proceeded to immediately conduct an unlawful arrest[,]" whereupon he "recovered a small plastic bagg[ie] of suspected cocaine." ***Id***. at 15, 18. Lethridge avers that "the totality of the circumstances did not support" a finding of probable cause, as: "Officer Franks was using binoculars to conduct surveillance from the sixth floor of a building across the street[;] he could not see the denomination of the bills, just that 'they were green bills of some sort[;]' [and] he did not have an unobstructed view of [Lethridge's] interactions." ***Id***. at 18.

Lethridge further argues that the instant case is "factually distinguishable" from ***Thompson***, which the trial court relied on in its Rule 1925(a) opinion. ***Id***. at 19. Lethridge explains that in ***Thompson***, "an undercover officer watched Thompson engage in a hand-to-hand transaction from his unmarked police vehicle" and that "[j]ust as the transaction

concluded[,] the officer stopped Thompson and seized, what he believed, were illegal narcotics[, while] the officer's partner [similarly] stopped the other party and recovered several packets of narcotics." *Id*. Lethridge points out that although our Supreme "Court in *Thompson* found that an officer's training and experience was a relevant factor in determining whether probable cause existed to conduct a warrantless arrest[,] the trial court's analysis [in the instant case] did not use Officer Franks' experience as a factor when determining whether there was probable cause to lawfully arrest" him. *Id*. (unnecessary capitalization omitted). Indeed, Lethridge asserts that the trial court's determination that Officer Franks' testimony was credible, combined with its notation that Lethridge's appearance was inconsistent with that of a typical drug user, was "not enough to support probable cause to arrest [him] without a warrant." *Id*. at 20.

Accordingly, Lethridge avers that "[t]he totality of the circumstances does not support the level of cause needed to conduct a warrantless arrest[, and that it i]nstead [only] supported Officer Franks conducting a detention in order to further investigate the situation, which he declined to do." *Id*. Lethridge argues that because "the Commonwealth failed to establish that Officer Franks had probable cause to arrest [him] without a warrant[,] the arrest violated [his] federal and state constitutional rights against unreasonable searches and seizures[.]" *Id*. Thus, Lethridge contends "the trial court erred in not suppressing all evidence derived from this

unconstitutional seizure as fruit of the poisonous tree." ***Id***. (unnecessary capitalization omitted).

The trial court considered Lethridge's first issue and determined that it was without merit, reasoning as follows:

> . . . Officer Franks credibly testified that from a vantage point directly across the street and with the assistance of binoculars, he observed [Lethridge] provide two individuals with what appeared to be crack cocaine in exchange for U.S. currency. These two interactions, combined with [Lethridge's] appearance being inconsistent with that of a typical drug user, provided Officer Franks with probable cause to arrest [Lethridge]. Thus, [Lethridge's] motion to suppress was properly denied.

Trial Court Opinion, 9/19/24, at 6 (unnecessary capitalization omitted).

Based on our review of the uncontradicted testimony by Officer Franks at the suppression hearing, we conclude that the record amply supports the trial court's finding that police had probable cause to arrest and search Lethridge. Here, the totality of the circumstances reflect that Officer Franks, who had received training in the recognition of different styles of narcotics transactions, witnessed Lethridge, in an area known for the sale and use of narcotics, blade his body, remove a "plastic baggie" from his person, and hand a "white rock" from within to an individual in exchange for an unknown quantity of U.S. currency. N.T., 1/29/24, at 7-8. Shortly thereafter, Officer Franks witnessed Lethridge engage in identical conduct — exchanging a white rock he pulled out of a small baggie for cash — with another individual. Although Officer Franks witnessed the quick succession of these events from the sixth floor of a building across the street, he did so in the middle of the

day and with the assistance of binoculars. Accordingly, the nexus between these events and Officer Franks' experience-based understanding that Lethridge did not appear to be a drug user, and that people who sell narcotics often carry a "larger baggie with multiple small rocks inside[,]" clearly supports a finding that a man of reasonable caution would believe that Lethridge illegally possessed a controlled substance, and that he sold it to two unknown individuals. *Id*. at 30; *see also Thompson*, 985 A.2d at 931; *Delvalle*, 74 A.3d at 1085. Thus, we conclude that Lethridge's first issue is without merit.

For ease of discussion, we address Lethridge's second and third issues together, as they each present a challenge to the sufficiency of the evidence underlying his convictions for PWID.[4] A challenge to the sufficiency of the evidence presents a question of law for which our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Johnson*,

_____

[4] Although Lethridge's statement of questions involved indicates that he is challenging the sufficiency of the evidence underlying two separate crimes, "delivery of a controlled substance" and PWID, we recognize that he did so in error, as: (1) the trial court never convicted him of the former crime, instead convicting him of *possession* of a controlled substance; and (2) Lethridge's brief solely contains argument as it relates to his conviction for PWID at 35 P.S. § 780-113(a)(30). Moreover, we note that even if Lethridge intended to challenge the sufficiency of the evidence as it relates to his conviction for possession of a controlled substance, it would nonetheless be waived, as he did not raise such a challenge in his Rule 1925(b) concise statement, but instead raised two sufficiency challenges pertaining to his PWID conviction. *See* Pa.R.A.P 1925(b)(4)(vii) (stating that issues not raised in a concise statement are waived); *see also* Trial Court Opinion, 9/19/24, at 3-4 (listing issues Lethridge raised in his Rule 1925(b) concise statement).

236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quotations marks, brackets, and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*) (citations and brackets omitted).

To establish the crime of PWID, the Commonwealth must prove that: (1) the substance was a controlled substance; (2) the defendant possessed

- 12 -

the substance; (3) the defendant was aware of the substance's presence; and (4) **the defendant possessed the substance with the specific intent to deliver**. **See** 35 P.S. § 780-113(a)(30). Intent to deliver may be established through circumstantial evidence. **See Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237-38 (Pa. 2007). Factors to consider when determining whether a defendant intended to deliver a controlled substance include: "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant." **Id**. These factors must be assessed under a totality of the circumstances standard. **See id**.

Lethridge argues the Commonwealth's evidence was insufficient to convict him of PWID as it "failed to prove, beyond a reasonable doubt, that [he] possessed cocaine with the intent to deliver and that he actually delivered it to the two unknown individuals." Lethridge's Brief at 21. Specifically, Lethridge avers that "the trial court did not offer any caselaw to support its contention that the evidence was sufficient to sustain both convictions" as his "possession of a small amount of crack cocaine, a digital scale, and $600[] in cash, when he was arrested and was observed interacting with two individuals[,] is not sufficient to sustain his convictions beyond a reasonable doubt." **Id**. at 23.

Lethridge highlights that Officer Franks "decided not to do any further investigation after arresting [him] to confirm whether narcotics transactions took place[, even though h]e testified that stopping the unknown male and

- 13 -

female to investigate whether they, in fact, purchased narcotics . . . was entirely possible[.]" *Id*. Lethridge additionally points out that: (1) he "did not possess any packing materials to support the distribution of narcotics[;]" (2) "Officer Franks stated the only other [evidence] to support a finding that [Lethridge] was distributing narcotics was [his possession of] a small digital scale[;]" and (3) "the amount of cocaine [he] had was a small amount, which does not support a finding that [he] possessed a controlled substance with the intent to deliver beyond a reasonable doubt." *Id*.

In support of his argument that he did not intend to deliver the cocaine recovered from his person, Lethridge looks to this Court's analysis in *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008), in which we "held that possession of a small amount of [a] controlled substance supports the conclusion that there is an absence of an intent to deliver." *Id*. at 24. Lethridge maintains that in *Lee*, "the officers watched two hand-to-hand transactions in which money was exchanged for small items retrieved from a nearby vacant parking lot[,]" that the officers thereafter recovered forty-nine Ziploc packets containing crack-cocaine from this vacant lot upon Lee's arrest, and that these packets "were identical to the ones officers recovered from the purchasers." *Id*. "In sharp contrast to the evidence established in *Lee*, [Lethridge asserts that] the small amount of cocaine recovered on [his] person, even coupled with the cash and digital scale, are insufficient to establish that [he] possessed a controlled substance with the intent to deliver it." *Id*. Additionally, Lethridge emphasizes that unlike the

officers in **Lee**, "Officer Franks did no further investigation to establish that the unknown male and female purchased cocaine from [him.]" **Id**. Thus, Lethridge argues that because "the evidence is insufficient to sustain his conviction[s, t]hey must be reversed and vacated." **Id**.

The trial court determined that the evidence was sufficient to support Lethridge's convictions for PWID, reasoning as follows:

> With respect to [Lethridge's] conviction of [PWID], the evidence established that [Lethridge] was in possession of a baggie with small rocks of crack cocaine, a digital scale, and $600 in U.S. currency. [Lethridge] did not have the appearance of a typical drug user. In addition, [Lethridge] was observed by Officer Franks to have delivered crack cocaine to two unknown individuals. It is noted that Officer Franks testified that the manner in which [Lethridge] packaged this crack cocaine is consistent with the manner that individuals who sell narcotics generally package and sell their contraband. As such, the evidence was sufficient to establish that [Lethridge] possessed crack cocaine with the intent to deliver.

Trial Court Opinion, 9/19/24, at 8.

Viewing the record in the light most favorable to the Commonwealth as the verdict winner, we determine the Commonwealth's evidence was sufficient to support Lethridge's convictions for PWID. Instantly, Officer Franks twice witnessed Lethridge remove a "small plastic baggie[,]" containing multiple "small white rock[s,]" from his person before subsequently distributing a rock to an unknown individual in exchange for U.S. currency. **Id**. at 8. Following Lethridge's arrest, police recovered this same "plastic baggie[,]" and later discovered that it contained 0.824 grams of cocaine — a controlled substance for purposes of PWID. **Id**. at 8, 31; **see also** 35 P.S. § 780-113(a)(30).

- 15 -

Officer Franks testified that Lethridge did not appear to be a drug user, and that his carrying a plastic baggie full of small white rocks instead indicated that he was selling narcotics. Moreover, in addition to the recovery of the bag of cocaine, police recovered an electronic scale and a large sum of cash, further signifying that Lethridge had an intent to deliver the cocaine that police had already witnessed him distribute. *See Ratsamy*, 934 A.2d at 1237-38.

Accordingly, the totality of these circumstances supports the trial court's determination that Lethridge not only knowingly possessed a controlled substance, but that he did so with an intent to deliver. *See* 35 P.S. § 780-113(a)(30); *see also Ratsamy*, 934 A.2d at 1237-38. Thus, because the evidence was sufficient to support Lethridge's PWID convictions, we similarly conclude that his second and third issues are meritless, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/12/2025